[No. 16716-6-II. Division Two. June 13, 1995.]

STATE OF WASHINGTON, *Respondent*, v. JOHN ERIC HIGLEY, *Appellant*.

---

*Lenell R. Nussbaum*, for appellant.

*Pamela Loginsky, Deputy Prosecuting Attorney*, for respondent.

MORGAN, J. — John Eric Higley appeals a conviction for vehicular assault. We affirm.

On July 4, 1989, a car driven by Higley collided with a car driven by Teri Dixon. Higley was intoxicated at the time. Dixon struck her head on the windshield and was taken to the hospital. The hospital medical staff did not think Dixon was seriously injured,[1] and someone so informed the investigating state trooper.

The trooper did not charge vehicular assault, which requires proof of serious bodily injury. RCW 46.61.522(1). Rather, he cited Higley for DWI and reckless driving, both misdemeanors. Higley was arraigned on July 25, 1989, and trial was set for mid-October, 1989.

During July and August, Dixon continued to experience headaches, nausea and amnesia related to the accident. In September, her physicians diagnosed a closed head injury, fractured vertebra and postconcussive syndrome, with some permanent impairment of vision and eye-hand coordination. No one informed the investigating trooper or the prosecutor of the new diagnosis.

On October 5, 1989, Higley petitioned for an order of deferred prosecution, and trial was postponed so he could be evaluated. *See* RCW 10.05.030-.050. On or before November 28, 1989, Higley apparently executed the statement required by RCW 10.05.020(2).[2] That statute provides:

> Before entry of an order deferring prosecution, a petitioner shall be advised of his rights as an accused and execute, as a condition of receiving treatment, a statement that contains:

---

[1]Apparently, one passenger in Higley's car and two passengers in Dixon's car were also taken to the hospital. Their injuries, if any, are not material to this case.

[2]Higley's statement does not appear in the record. It is required by law, however, RCW 10.05.020(2), and neither party disputes it was made.

(a) An acknowledgement of his rights; (b) a stipulation to the admissibility of the facts contained in the written police report; and (c) an acknowledgement that the statement will be entered and used to support a finding of guilty if the court finds cause to revoke the order granting deferred prosecution.

On November 28, 1989, the District Court granted an order deferring prosecution. The order required Higley to successfully complete a two-year treatment program and report to a supervising probation officer. *See* RCW 10.05.150, .170.

On March 22, 1990, Dixon's civil attorney wrote to the prosecutor asking for copies of the police reports related to the accident. The letter said that Dixon had sustained a brain injury and a broken neck. This was the first notice to law enforcement that Dixon had been seriously hurt. The prosecutor took no action, except to supply the requested police reports.

In June, Dixon herself wrote to the prosecutor. She described her injuries, their impact on her life, and her anger at the disposition of Higley's case. The prosecutor responded with a letter explaining that the State had not known about Dixon's injuries when Higley was placed on deferred prosecution.

In September 1990, Dixon's civil attorney again wrote to the prosecutor. This time, he sought help in locating Higley. He enclosed a note from Higley's father, indicating that Higley had gone to Alaska to work on a fishing boat. Thinking that Higley had left the state without permission, the prosecutor began to investigate further.

Higley returned from Alaska in October. By that time, the prosecutor had examined Dixon's medical records and decided that a charge of vehicular assault should be filed. Thus, on November 26, 1990, the prosecutor filed a motion asking the District Court to revoke the order of deferred prosecution and dismiss without prejudice the underlying misdemeanor charges.

In January 1991, the District Court held an evidentiary hearing. On February 7, it ruled that Higley had gone to

Alaska with the approval of his treatment program; that he was making up the meetings he had missed; that he could still complete the program within two years; that both the program and his probation officer thought he was making good progress; and that his deferred prosecution should not be revoked. Citing RCW 10.05.090 and RCW 10.05.120, it further ruled that it lacked the authority to dismiss the charges without prejudice, unless the defendant had failed to perform his treatment plan or had successfully completed treatment. Neither event having occurred, the District Court denied the motion to dismiss without prejudice.

The State obtained a writ of review from the Superior Court. In April, that court declined to disturb the District Court's holding that Higley had not committed a violation sufficient to warrant revocation. It also ruled that even in the absence of a violation, the District Court had discretion to dismiss the underlying charges without prejudice. It remanded the case to the District Court, essentially with directions for that court to exercise its discretion.

On July 18, 1991, after another hearing, the District Court ruled that the charges for DWI and reckless driving should be dismissed without prejudice. Later the same day, the State filed a charge of vehicular assault in the Superior Court.

On August 7, 1991, Higley filed a motion in Superior Court to dismiss the charge of vehicular assault. He also asked the Superior Court to stay the vehicular assault charge while he sought review of the District Court's order of dismissal without prejudice. He waived speedy trial prospectively, but reserved the right to assert violations already accrued. The Superior Court granted the stay and delayed disposition of the motion to dismiss.

Higley appealed the order of dismissal without prejudice to the Superior Court. When the Superior Court refused to alter the District Court's order, he sought discretionary review from this court and the Supreme Court. Both denied review, with the Supreme Court's denial coming on September 15, 1992.

On October 5, 1992, the Superior Court denied the motion to dismiss that had been pending since August 7, 1991. Later the same day, Higley agreed to a bench trial and stipulated to the facts of the accident. The trial judge then entered a verdict of guilty of vehicular assault.

Sentencing took place on December 15, 1992. Although Higley's standard range was three to nine months, the trial court found that he had cooperated fully and in good faith with his treatment program, that he had "rehabilitated himself in the community",[3] and that his "restitution obligations have been discharged in [a separate] civil action".[4] The court imposed an exceptional sentence of 30 days in jail, to be served on weekends, plus 24 months of community supervision.[5]

Higley now appeals. As he did in Superior Court, he claims that the Superior Court's order denying his motion to dismiss the vehicular assault charge violated (1) his right against double jeopardy, (2) his rights to speedy trial, (3) his rights under the deferred prosecution statute, and (4) his right to due process of law.

# I

## DOUBLE JEOPARDY

Higley claims that jeopardy attached on November 28, 1989, when the District Court entered its order granting deferred prosecution. The State argues that jeopardy never attached, and, even if it did, that prosecution is not barred because of what, for reasons we explain below, we call the *Diaz* exception.

## A

■ The double jeopardy clause guarantees that no person shall "be subject for the same offense to be twice

---

[3]Clerk's Papers, at 59.

[4]Clerk's Papers, at 25.

[5]The State elected not to appeal the exceptional sentence.

put in jeopardy of life or limb". U.S. Const. amend. V. The double jeopardy clause bars prosecution if (a) jeopardy attached, *Serfass v. United States*, 420 U.S. 377, 388, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975), (b) jeopardy terminated, *Richardson v. United States*, 468 U.S. 317, 325, 82 L. Ed. 2d 242, 104 S. Ct. 3081 (1984), and (c) the relationship between the charge to which jeopardy attached and the present charge satisfies the *Blockburger* same-elements test.[6] *United States v. Dixon*, ___ U.S. ___, 125 L. Ed. 2d 556, 113 S. Ct. 2849 (1993); *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932); *see State v. Calle*, 125 Wn.2d 769, 778 n.4, 888 P.2d 155 (1995).

Jeopardy does not attach merely because a charge is filed or pretrial proceedings are held. *Serfass*, 420 U.S. at 389. Rather, it attaches when a defendant is "put to trial before the trier of facts, whether the trier be jury or a judge". *Serfass*, at 388 (quoting *United States v. Jorn*, 400 U.S. 470, 479, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971)). It attaches in a jury trial when the jury is empaneled, or in a bench trial when the court begins to receive evidence. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977); *Serfass*, at 388; *State v. Culp*, 30 Wn. App. 879, 881, 639 P.2d 766 (1982). It attaches in a guilty plea proceeding when the court accepts the plea. *State v. Crisler*, 73 Wn. App. 219, 223, 868 P.2d 204, *review granted*, 124 Wn.2d 1014 (1994) and *aff'd sub nom. State v. Gocken*, 127 Wn.2d 95 (1995); *State v. Knutson*, 11 Wn. App. 402, 404, 523 P.2d 967 (1974).

Here, the purpose of the November 28 proceeding was not to adjudicate Higley's guilt or innocence, but to

---

[6]"The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution". *Dixon*, 125 L.Ed.2d at 568, 113 S. Ct. at 2856; *State v. Crisler*, 73 Wn. App. 219, 223, 868 P.2d 204, *review granted*, 124 Wn.2d 1014 (1994) and *aff'd sub nom. State v. Gocken*, 127 Wn.2d 95 (1995).

determine if he should be placed on deferred prosecution.[7] Thus, the proceeding was not a bench trial at which the District Court began to receive evidence. Nor was it a guilty plea. Higley apparently submitted a statement pursuant to RCW 10.05.020(2), but not so the court could use it at that time; rather, he submitted the statement for the prosecutor to use, if necessary, if and when a trial ever became necessary.[8] Under these circumstances, jeopardy did not attach.

### B

■ Even if the double jeopardy clause would otherwise apply, it does not bar prosecution for a greater charge if, when jeopardy attached to a lesser charge, a fact essential to support the greater charge was not in existence or was not discoverable by the State in the exercise of due diligence. *Diaz v. United States*, 223 U.S. 442, 448-49, 56 L. Ed. 500, 32 S. Ct. 250 (1912); *Illinois v. Vitale*, 447 U.S. 410, 420 n.8, 65 L. Ed. 2d 228, 100 S. Ct 2260 (1980); *Brown v. Ohio*, 432 U.S. 161, 169 n.7, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977); *State v. McMurray*, 40 Wn. App. 872, 874, 700 P.2d 1203 (1985); *State v. Escobar*, 30 Wn. App. 131, 135, 633 P.2d 100 (1981). Hereafter, we call this the *Diaz* exception.

---

[7]This view of the purpose of the November 28 proceeding finds support in the language if not the holdings of various cases. In *State v. Wright*, 54 Wn. App. 638, 640 n.1, 774 P.2d 1265 (1989), the court said, "Deferred prosecution occurs, as its name implies, *prior to any adjudication of guilt or innocence*". (Emphasis added.) In *State v. Vinge*, 59 Wn. App. 134, 138, 795 P.2d 1199 (1990), *review denied*, 116 Wn.2d 1006 (1991), the court said, "A deferred prosecution treatment program, unlike a deferred sentence or probation, occurs *prior to an adjudication of guilt*". (Emphasis added.) In *State v. Friend*, 59 Wn. App. 365, 367, 797 P.2d 539 (1990), the court said, "By definition, deferred prosecution defendants *have not even been prosecuted, much less convicted*". (Emphasis added.) In *State v. Shattuck*, 55 Wn. App. 131, 135, 776 P.2d 1001 (1989), the court said, "[T]he overall design of the statute is to provide a streamlined procedure by which those with substance abuse problems will be encouraged to seek treatment and rehabilitation *in lieu of criminal prosecution*". (Emphasis added.) And in *State ex rel. Schillberg v. Cascade Dist. Court*, 94 Wn.2d 772, 779, 621 P.2d 115 (1980), the court said that deferred prosecution "is fundamentally a new sentencing alternative of *preconviction* probation". (Emphasis added.)

[8]*Cf. State v. Shattuck, supra* (defendant made statement pursuant to RCW 10.05.020(2); prosecutor submitted statement at trial held after deferred prosecution had been revoked).

■ To prove vehicular assault, as opposed to DWI or reckless driving, the State must prove serious bodily injury. RCW 46.61.522(1). Serious bodily injury means bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body. RCW 46.61.522(2).

It is undisputed that before March 1990 the State did not know that Dixon had suffered serious bodily injury. Thus, the issue is whether the State exercised due diligence to discover that fact.

The District Court ruled that the State exercised due diligence in discovering the extent of Teri Dixon's injuries and in bringing its motion to dismiss. In an agreed order, the Superior Court made the same ruling for the same reasons.

Higley now assigns error to this ruling. He says that if the State had been exercising due diligence, it would have recontacted Dixon after the accident but before November 28, and thus would have discovered the fact of serious bodily injury before the hearing on November 28, 1989.

■ It is our view that due diligence does not require an investigating trooper to recontact an accident victim about the extent of her injuries after she has been examined at a hospital, the hospital staff has found no serious injury, and the hospital staff has so informed the trooper. The record does not suggest anything else the State could or should have done to discover the extent of Dixon's injuries. Thus, we hold that the State did not fail to exercise due diligence, and that the *Diaz* exception applies here.

## II

### RIGHTS TO SPEEDY TRIAL

Higley claims that the Superior Court violated his right to speedy trial under CrR 3.3, as well as his constitutional right to speedy trial. He assumes that the information filed in Superior Court on July 18, 1991, charged the same

crime as the citation filed in the District Court on July 9, 1989. For purposes of this case only, we make the same assumption.

## A

CrR 3.3(c)(2) provides in pertinent part:

(i) . . . If after proceedings have been initiated in district court an information or indictment is filed with the superior court, and if at the time the information or indictment is filed . . . the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 14 days after the date of that appearance in superior court which next follows the filing of the information or indictment. . .. A defendant released from jail . . . shall be brought to trial not later than 90 days after the date of arraignment, less time elapsed in district court.

(ii) "Time elapsed in district court" means the following: . . . If at the time a complaint is filed with the district court the defendant is not detained in jail or subjected to conditions of release, time elapsed in district court commences on the date of the defendant's appearance in district court which next follows the filing of the complaint. Time elapsed in district court ends with the earlier of (a) an oral or written order of dismissal entered by the district court, or (b) the filing of an information or indictment in superior court.

CrR 3.3(c)(4) provides:

If a defendant is not arraigned within the time limits of this rule and an objection to the date of arraignment has been made as required by section (e) of this rule, the time for trial established in this section shall commence on the last day the defendant could properly have been arraigned.

Here, the vehicular assault charge was filed in Superior Court on July 18, 1991. The record does not show that Higley appeared on that date, but adopting the position most favorable to him, we assume he did. Given this assumption, the court was required to arraign him on or before August 1, 1991, and to try him within 90 days thereafter, "less time elapsed in district court".

Absent RCW 10.05.110, "time elapsed in district court"

would have been from July 25, 1989, the date of appearance that next followed the filing of the citation for DWI and reckless driving, to July 18, 1991, the date the District Court dismissed without prejudice and the State filed the vehicular assault information in Superior Court. RCW 10.05.110 provides, however, that "[d]elay in bringing a case to trial caused by a petitioner requesting deferred prosecution as provided for in this chapter shall not be grounds for dismissal".

 Higley argues that "delay . . . caused by a petitioner requesting deferred prosecution" is delay between the date on which a petition for deferred prosecution is filed and the date on which it is granted, but not delay thereafter (i.e., delay between the date on which a petition is granted and the date on which the deferred prosecution is terminated). If adopted, this argument would bar trial of a deferred prosecution defendant long before completion of his or her two-year program of treatment, see RCW 10.05.150, because the trial clock would resume ticking when the petition was granted and expire not more than 90 days later. It is inconceivable that the Legislature intended such a result, for in writing other parts of the deferred prosecution statute it clearly envisioned that the defendant would remain subject to trial for at least two years after deferred prosecution was granted. RCW 10.05-.090, .100, .120, .150; see State v. Vinge, 59 Wn. App. 134, 795 P.2d 1199 (1990). Thus, we hold that in cases in which a deferred prosecution petition is granted, "delay . . . caused by a petitioner requesting deferred prosecution" means delay from the date on which a petition is filed to the date on which deferred prosecution is revoked or otherwise terminated.

Here, Higley brought his motion to dismiss on August 7, 1991. Six days elapsed between the last date on which Higley could properly have been arraigned and the date on which the motion was heard (August 1, 1991, to August 7,

1991).[9] Seventy-two days elapsed in District Court (July 25, 1989 to October 5, 1989). *See* CrR 8.1; CR 6; *State v. Burroughs*, 23 Wn. App. 190, 192 n. 2, 596 P.2d 1340, *review denied*, 92 Wn.2d 1033 (1979); *State v. Curry*, 14 Wn. App. 775, 777 n. 2, 545 P.2d 1214 (1976). Under RCW 10.05.110, the period that commenced on October 5, 1989, the date of the filing of the petition, and ended on July 18, 1991, the date the District Court dismissed the underlying charges without prejudice, cannot be used as grounds for dismissal under CrR 3.3. Thus, when Higley's motion to dismiss was heard on August 7, 1991, 78 days had elapsed and 12 remained. The Superior Court did not err in denying Higley's motion to dismiss insofar as it was based on CrR 3.3.

B

■ The United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial". U.S. Const. amend. VI. The Washington Constitution similarly provides, "In criminal prosecutions the accused shall have the right to . . . have a speedy public trial". Const. art. I, § 22. Because the parties do not argue otherwise, we assume these provisions are the same.

■ Unlike CrR 3.3, the constitutional right to speedy trial attaches when a charge is filed or an arrest is made, whichever occurs earlier. *United States v. Loud Hawk*, 474 U.S. 302, 310-11, 88 L. Ed. 2d 640, 651, 106 S. Ct. 648 (1986); *United States v. MacDonald*, 456 U.S. 1, 7, 71 L. Ed. 2d 696, 703, 102 S. Ct. 1497 (1982); *Dillingham v. United States*, 423 U.S. 64, 65, 46 L. Ed. 2d 205, 207, 96 S. Ct. 303 (1975); *United States v. Marion*, 404 U.S. 307, 320, 30 L. Ed. 2d 468, 479, 92 S. Ct. 455 (1971); *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989); *State v. Christensen*, 75 Wn.2d 678, 686-88, 453 P.2d 644 (1969). Unlike

___

[9]Higley waived time from August 7, 1991, to October 5, 1992. Thus, we treat the motion as having been heard on August 7, 1991, even though it was actually heard on October 5, 1992.

CrR 3.3, the constitutional right is violated not at the expiration of a fixed time, but at the expiration of a reasonable time. *Barker v. Wingo*, 407 U.S. 514, 537, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972) (White, J., concurring); *State v. Poulos*, 31 Wn. App. 241, 243, 640 P.2d 735, *review denied*, 97 Wn.2d 1018 (1982); *State v. Rolax*, 3 Wn. App. 653, 656, 479 P.2d 158 (1970), *review denied*, 78 Wn.2d 996 (1971). What constitutes a reasonable time depends on all the factors in a particular case. *Fladebo*, at 393. Four major factors are the length of the delay, the reason for the delay, whether and when the defendant asserted his right to speedy trial, and prejudice to the defendant. *Barker*, at 530; *Fladebo*, at 393. Prejudice is a major factor, but not an essential one. *Moore v. Arizona*, 414 U.S. 25, 26, 38 L. Ed. 2d 183, 185, 94 S. Ct. 188 (1973).

Here, the length of delay was from July 25, 1989, when the citation was filed in District Court, to October 5, 1992, when Higley was tried and found guilty in Superior Court. Most of this delay was due to the fact that Higley had applied for and been granted deferred prosecution. Higley did not demand speedy trial until the summer of 1991, and the delay thereafter was due to appellate proceedings in various courts. The delay thereafter was also encompassed by the prospective waiver of speedy trial that Higley proffered on August 7, 1991. Higley has not shown that he suffered prejudice to any significant degree, although he argues to the contrary.[10] In sum, Higley's constitutional right to speedy trial was not violated.

---

[10]Higley contends he was prejudiced when, on March 19, 1991, he refrained from claiming his right to self-incrimination and gave a deposition in a civil action brought against him by Dixon. The record does not contain the deposition, and we have no way of knowing what it contains. The record does not show what evidence the State already possessed, so we have no way of knowing whether the deposition filled gaps in the State's case or was merely cumulative. The record does not show whether the State came into possession of the deposition, whether the State threatened to use the deposition before trial, or whether the State used the deposition at the bench trial of October 5, 1992. For these and other reasons, we decline to find that the deposition caused prejudice.

Higley also contends he was prejudiced because he continued in his deferred prosecution program, "at considerable cost and expenditure of time on his part". Br. of Appellant at 33. He acknowledges, however, that this was in his best interests. Prejudice, if any, was insignificant.

## III

### The Deferred Prosecution Statute

Higley claims that the Superior Court should have dismissed the vehicular assault charge because the District Court violated the deferred prosecution statute when it entered its July 18, 1991 order of dismissal without prejudice. The State responds that the order of dismissal without prejudice was controlled not by the deferred prosecution statute, but by CrRLJ 8.3(a).

An order terminating deferred prosecution is different from an order dismissing without prejudice. An order terminating deferred prosecution does not disturb the underlying charges and moves the case forward to trial or plea. An order of dismissal without prejudice annuls the underlying charges and ends the case, subject to refiling.

A motion for an order terminating deferred prosecution is governed, at least in part, by RCW 10.05.090 and RCW 10.05.100.[11] RCW 10.05.090 permits the court to terminate a defendant's treatment plan if he or she fails or neglects to perform it. RCW 10.05.100 requires the court to terminate a defendant's treatment plan if he or she is convicted of a new "similar offense".

A motion for an order dismissing without prejudice is governed by CrRLJ 8.3(a). That rule provides:

> The court may, in its discretion, upon motion of the prosecuting authority setting forth the reasons therefor, dismiss a complaint or citation and notice.

Here, we are dealing with a motion to dismiss without prejudice. Thus, CrRLJ 8.3(a) applies. The State gave a valid reason for dismissal when it showed that it was reasonably unaware of Dixon's injuries when Higley was granted deferred prosecution, and that based on new information it now wished to file a felony charge in Superior Court. *See State v. Weiss*, 73 Wn.2d 372, 377, 438 P.2d 610

---

[11]We do not address Higley's contention that RCW 10.05.090 and RCW 10.05.100 describe the *only* circumstances under which an order terminating deferred prosecution can be granted.

(1968). At that point, the District Court acquired discretion to grant or deny the motion, and it did not abuse its discretion in ruling as it did.

At least impliedly, Higley argues that if prosecutors can move to dismiss without prejudice under CrRLJ 8.3(a), they will be able to "unilaterally veto"[12] petitions for deferred prosecution. We think, however, that this is incorrect. Just as a district court acting under the provisions of RCW 10.05 has discretion to grant deferred prosecution despite prosecutorial objection, *State ex rel. Schillberg v. Cascade Dist. Court*, 94 Wn.2d 772, 621 P.2d 115 (1980), a district court acting under CrRLJ 8.3(a) has discretion to deny dismissal without prejudice (and ancillary termination of deferred prosecution) despite prosecutorial objection.

## IV

### DUE PROCESS OF LAW

Higley argues that when he obtained an order granting deferred prosecution, he was, in effect, entering a guilty plea. Based on that premise, he reasons that he is entitled to the same due process rights as a person who pled guilty.

To accept deferred prosecution is not the same as to plead guilty.

To accept deferred prosecution is, by definition, to leave adjudication by plea or trial to a later time. *State v. Wright*, 54 Wn. App. 638, 640 n.1, 774 P.2d 1265 (1989) ("Deferred prosecution occurs, as its name implies, prior to any adjudication of guilt or innocence".); *Vinge*, 59 Wn. App. at 138 ("A deferred prosecution treatment program, unlike a deferred sentence or probation, occurs prior to an adjudication of guilt".); *State v. Friend*, 59 Wn. App. 365, 367, 797 P.2d 539 (1990) ("By definition, deferred prosecution defendants have not even been prosecuted, much less convicted"). To plead guilty is to submit to adjudication

---

[12]Br. of Appellant, at 34.

by plea, provided of course that the court accepts the plea. *See State v. Tourtellotte*, 88 Wn.2d 579, 564 P.2d 799 (1977); *Crisler*, 73 Wn. App. at 223; *Knutson*, 11 Wn. App. at 404. Here, Higley did not plead guilty, and he did not acquire the due process rights of one who does.

The parties' remaining arguments need not be reached or lack merit.

Affirmed.

HOUGHTON, A.C.J., and ALEXANDER, J. Pro Tem., concur.

Review denied at 128 Wn.2d 1003 (1995).