[Nos. 14768-1-III; 14769-0-III; Division Three. January 23, 1997.]
 15655-9-III.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID
ALLEN MONSON, *Petitioner*.

*In the Matter of the Personal Restraint of* DAVID
ALLEN MONSON, *Petitioner*.

*David A. Monson,* pro se.
*Paul J. Wasson,* for petitioner.
*James R. Sweetser, Prosecuting Attorney* and *Kevin M. Korsmo, Deputy,* for respondent.

SCHULTHEIS, J. — David Monson was extradited to

Washington from New York State in 1994, 13 years after
the second of two complaints were filed in Spokane County
District Court charging him with second degree rape. He
moved for dismissal of the two charges on the grounds his
speedy trial rights had been violated. After the trial court
denied the motions, this court granted discretionary
review. We affirm.

## FACTS AND PROCEDURAL POSTURE

In July 1980 and again in March 1981, Mr. Monson was
charged in district court with two separate counts of
second degree rape.[1] RCW 9A.44.050(1)(a). Warrants were
filed for both complaints in the intrastate and interstate
police computer systems. At the time the first warrant
was issued, Mr. Monson was on probation for a second
degree assault conviction. His failure to comply with the
probation conditions led to the January 1981 issuance of
an additional warrant for parole violation. Due to the age
of these complaints and warrants, the district court files
have been destroyed.

Mr. Monson had quit his job at Kaiser Aluminum and
moved to Montana by August 1980. During the next de-
cade, he worked as a truck driver, ranch hand and con-
struction worker, and lived in several states. After efforts
to serve him in 1980 and 1981, little was done to find him
until 1984-85, when Spokane police told his parents and
other relatives about the warrants. From January 1990
until September 1992, he lived in Anacortes and Oak
Harbor, Washington, and carried a Washington identifica-
tion card. He moved to his father's New York State resort
in September 1992. Later that month, he was detained
by United States Customs agents at the Canada/New
York border on the outstanding Spokane County war-
rants. At that time, a New York officer contacted the
Spokane County Sheriff's Department and was told the

---

[1]The rapes, involving two victims, were alleged to have been committed on
July 1, 1980, and August 17, 1980.

department would not extradite. Mr. Monson was released from custody.

About 17 months later, in February 1994, a detective from Spokane contacted the New York police and informed them Washington was ready to extradite Mr. Monson. New York officers arrested him and he was extradited to Spokane. On August 15 and September 20, 1994, the State filed informations in Spokane County Superior Court charging Mr. Monson with the July and August 1980 second degree rapes and he was arraigned.[2] Subsequently, Mr. Monson moved for dismissal on the grounds his CrR 3.3 and constitutional speedy trial rights had been violated. He argued the speedy trial period should have begun running when he was detained in New York in 1992 and Washington refused to extradite him. The trial court denied the motion and ruled the speedy trial period was not triggered because Mr. Monson was not amenable to process while he was in New York.

Mr. Monson's motion for discretionary review was granted and the two cases were consolidated by notation ruling on October 3, 1995. Mr. Monson's personal restraint petition was linked to these cases in October 1996. For the purposes of this opinion, all matters have been consolidated. Following this court's stay pending the CrR 3.3 speedy trial decision in *State v. Hudson*, 130 Wn.2d 48, 921 P.2d 538 (1996), we allowed supplemental briefing.[3]

### AMENABILITY TO PROCESS

Mr. Monson first argues the long delay between the filing of the complaints in district court and his first court appearance violated his CrR 3.3 speedy trial rights.

Under CrR 3.3, a defendant who is not detained in jail or subject to conditions of release must be arraigned

---

[2]The information charging Mr. Monson with the second of the two rapes is not included in the record, but he does not challenge the date of its filing.

[3]Mr. Monson's "Assertion of Right to Speedy Appeal" and "Motion to Return to Superior Court" are denied.

within 14 days of his or her first appearance in superior court following the filing of the information or indictment. CrR 3.3(c)(1); *State v. Greenwood*, 120 Wn.2d 585, 589, 845 P.2d 971 (1993). A defendant who is first charged by complaint in district court (such as the case here) and who is not detained must be brought to trial no later than 90 days after the date of arraignment less "time elapsed in district court." CrR 3.3(c)(2)(i); *State v. Holien*, 47 Wn. App. 124, 127, 734 P.2d 508 (1987). "Time elapsed in district court" commences on the date of the first appearance in district court following the filing of the complaint. CrR 3.3(c)(2)(ii). When a defendant is not arraigned within CrR 3.3(c)(1)'s time frame, the court establishes a constructive arraignment date based on the last day the defendant could have been properly arraigned — 14 days after the first court appearance, if not in custody. CrR 3.3(c)(1), (4); *Greenwood*, 120 Wn.2d at 590. Failure to comply with the time limits of CrR 3.3 will result in dismissal with prejudice. CrR 3.3(i).

■ If a long and unnecessary delay occurs in bringing a defendant who is amenable to process before the court for his or her first appearance, CrR 3.3's 104-day time-for-trial period[4] is deemed to commence at the time the information or complaint was filed (the *Striker*[5] rule). *Greenwood*, 120 Wn.2d at 591; *State v. Marler*, 80 Wn. App. 765, 771-72, 911 P.2d 420, *review denied*, 129 Wn.2d 1024 (1996). Application of the *Striker* rule, however, depends on whether the defendant was amenable to process during the delay. If the defendant was not amenable to process, the *Striker* rule is not invoked, and the delay period is excluded from the computation of the time-to-trial period. *State v. Lee*, 48 Wn. App. 322, 738 P.2d 1081 (1987). The rule also does not apply where the State exercises good faith and due diligence in bringing a defendant before the court for a first appearance. *Greenwood*, 120 Wn.2d at 601.

---

[4] Ninety days plus the 14 days of constructive arraignment (CrR 3.3(c)(1)).

[5] *State v. Striker*, 87 Wn.2d 870, 875, 557 P.2d 847 (1976).

Accordingly, we first ask whether Mr. Monson was amenable to process. Recently, two Washington Supreme Court cases held that out-of-state defendants wanted for crimes in Washington were not amenable to process and therefore could not invoke the *Striker* rule. *State v. Stewart*, 130 Wn.2d 351, 922 P.2d 1356 (1996); *Hudson*, 130 Wn.2d 48. *Hudson*, a consolidated case, involved defendants charged with crimes after they left the state. In each case, the defendants argued their CrR 3.3 speedy trial rights were violated by the delay in their arraignments. The Supreme Court held that *Striker* may not be invoked even when the out-of-state defendant had no notice of the warrant or wrote to inform the prosecutor's office of his out-of-state address. Whether or not the State exercised good faith and due diligence in notifying the defendant of the arraignment date, the *Striker* rule will not apply unless he or she was amenable to process. *Hudson*, 130 Wn.2d at 57.

The situation in *Stewart* is even closer to the facts before us. There the defendant left the state to attend school in Arizona. Because he was on probation due to a prior offense, he obtained permission from his probation officer to attend the out-of-state school, gave the officer his new address and maintained contact. After Mr. Stewart left the state, he was charged with an unrelated felony. Although his address was listed on the information, the State issued an arrest warrant stating that his whereabouts were unknown and made no effort to discover his Arizona address from the probation officer. A warrant was put on the national teletype, stating that the county would only extradite from nearby states. At one point, Mr. Stewart was arrested in Arizona on the Washington warrant, but was released when the Arizona police noticed Washington would not extradite from their state. He turned himself in when he moved back to Washington a month later, and he moved to quash the warrant for violations of his CrR 3.3 speedy trial right.

■ Holding first that the *Striker* rule did not apply

because Mr. Stewart was not amenable to process, the Supreme Court also held that the good faith and due diligence exception to *Striker* applies only when a defendant is amenable to process. *Stewart*, 130 Wn.2d at 362-64. Although the State is required by the Interstate Agreement on Detainers (IAD), RCW 9.100, to extradite for speedy trial a defendant incarcerated out of state, the IAD must first be utilized by the State's filing of a detainer and the defendant's written demand for trial. The brief time Mr. Stewart was detained while Arizona determined whether Washington would extradite did not prevent him from exercising his CrR 3.3 speedy trial rights. *Stewart*, 130 Wn.2d at 365.

■ It is clear after *Stewart* and *Hudson* that while Mr. Monson was living in New York, he was not amenable to process and the *Striker* rule did not apply. As in *Stewart*, neither the State nor Mr. Monson utilized the IAD and he was only briefly detained while the New York officers checked on extradition. Accordingly, his CrR 3.3 speedy trial period began when he first appeared in Washington. No speedy trial violation is alleged from that starting date.

■ ■ Alternatively, Mr. Monson contends the CrR 3.3 speedy trial period was triggered earlier, when he lived in Washington from 1990 to 1992. He asserts the State did not use due diligence to arrest him during this period, and triggered the good faith and due diligence rule of *Greenwood*. Whether the State acts in good faith and with due diligence turns on the facts of each case. *Greenwood*, 120 Wn.2d at 601. Even if we accept Mr. Monson's assertion that the State's failure to bring him to trial during this time was not his fault, the record shows the State made several good faith efforts from 1980 on to notify him he was wanted and to serve the warrant. In particular, Mr. Monson's relatives were notified and the warrant was put both on the intrastate and the interstate computer systems. In 1980, Mr. Monson was ordered as conditions of probation to meet monthly with his probation officer and

not to leave the county without written permission. He did not comply with these conditions. The fact that a state agency issued him an identification card sometime around 1990 does not reflect a lack of due diligence. All in all, the State's efforts to find and arrest Mr. Monson constituted due diligence, preventing application of the *Striker* rule.

Mr. Monson argues pro se the State violated his federal and state constitutional speedy trial rights. The State responds that this issue may not be raised because it was not included in the motion for discretionary review and was not asserted at arraignment.

 Constitutional claims may be heard for the first time on appeal. RAP 2.5(a)(3); *State v. Hieb*, 107 Wn.2d 97, 108, 727 P.2d 239 (1986). Both U.S. CONST. amend. VI and WASH. CONST. art. I, § 22 (amend. 10) provide criminal defendants the right to a speedy public trial. *State v. Higley*, 78 Wn. App. 172, 184, 902 P.2d 659, *review denied*, 128 Wn.2d 1003 (1995). Unlike CrR 3.3, the constitutional right to speedy trial is not violated at the expiration of a fixed time, but at the expiration of a *reasonable* time. *Higley*, 78 Wn. App. at 184-85. We consider and balance four factors in determining whether the delay was reasonable: the length of the delay, the reason for the delay, whether the defendant asserted the right, and the prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 650-51, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992); *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Higley*, 78 Wn. App. at 185.

 The reasons for the lengthy delay in bringing Mr. Monson to arraignment were his unamenability to arrest and the difficulty in tracing his whereabouts. The record supports the inference that his relatives informed him there were warrants out for his arrest. At no time during the decade after the informations were filed did he attempt to contact his probation officer or assert his right to speedy trial. Furthermore, his claim that the long delay will make it difficult to find witnesses for the defense is not persuasive. The State has also had difficulty tracking

down its chief witnesses and is sure to be hampered by the long delay. In any event, prejudice is not an essential factor in determining whether the constitutional right to a speedy trial has been violated. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973); *Higley*, 78 Wn. App. at 185. Under the facts of this case, the delay in bringing Mr. Monson before the court was reasonable and no violation of his constitutional speedy trial rights.

Finally, Mr. Monson argues in his personal restraint petition that he has been wrongfully held without bail for violation of his probation. In particular, he contends he has been incarcerated without a revocation hearing for a period longer than his original sentence.

In granting probation, a trial court has the authority to order the defendant to report to a probation officer and to follow the officer's instructions. RCW 9.95.210(4) Here, Mr. Monson was ordered to report to his probation officer every month, in person, and to obtain written permission for travel outside the county. Although he contends his probation officer gave him written permission to leave the state and told him he did not have to report in every month, the probation officer noted in his chronological record that the story of a travel permit was untrue and that he never received notice Mr. Monson was leaving the county. Mr. Monson did not submit evidence of a written permit, and the State has no record of one.

 Since Mr. Monson failed to report to his probation officer and left the jurisdiction without permission, his probationary period was tolled until he was returned to Washington in 1994. *Gillespie v. State*, 17 Wn. App. 363, 366, 563 P.2d 1272, *review denied*, 89 Wn.2d 1008 (1977). His probation revocation hearing was continued until after trial on the rape charges. As long as Mr. Monson is being held on the criminal charges, it is permissible and appropriate to delay the revocation of probation hearing. *State v. Valentine*, 20 Wn. App. 511, 514-15, 580 P.2d 1119 (1978).

The trial court's denial of the speedy trial challenge is

affirmed and Mr. Monson's personal restraint petition is denied.

SWEENEY, C.J., and MUNSON, J. Pro Tem., concur.

After modification, further reconsideration denied March 18, 1997.

Review denied at 133 Wn.2d 1015 (1997).