IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46239-7-II |
| v. | |
| DARRELL NEWTON NELSON, | UNPUBLISHED OPINION |

WORSWICK, P.J. — Darrell Nelson appeals his conviction for one count of second degree assault with a deadly weapon. He argues that the trial court erred by (1) permitting private peremptory challenges, thereby denying Nelson his right to a public trial; (2) admitting evidence of Nelson's erratic behavior in the days before the assault at issue; and (3) refusing to rule on Nelson's request for a writ of habeas corpus. In a pro se statement of additional grounds (SAG), Nelson claims that (4) the trial court erred by refusing his motion to proceed pro se in a previous trial, (5) his right to a speedy trial was violated because of 20 continuances, and (6) his right to an impartial jury was violated. We affirm.

FACTS

Darrell Nelson grew marijuana in the house where he lived with his seven children. In January 2013, Nelson's demeanor changed: he became aggressive and paranoid about people stealing his marijuana. He ordered some of his eldest sons to move out of the house. Then in

February or March 2013, he began poking holes in the ceiling of his house into the attic, in a stated attempt to "stab people and make them bleed so he could have their DNA [(deoxyribonucleic acid)]." 4 Verbatim Report of Proceedings (VRP) (April 17, 2014) at 426. He also threatened to kill himself around early March.

On March 11, Nelson's 15-year-old son RJN[1] tried to enter the house. Nelson tried to grab RJN by the neck, scratching him. Once the two were inside the house, Nelson ran at RJN and used his body to push him into the stove. The struggle left RJN with scratches on his neck and chest. Nelson began rifling through RJN's backpack on the kitchen counter. RJN struggled to get the backpack from Nelson, at which point Nelson pulled a knife out of the sink. He held the knife toward RJN at a distance of about two feet, causing RJN fear.

The State charged Nelson with one count of second degree assault for assaulting RJN with a deadly weapon.[2] It also alleged several aggravating sentencing factors.

Two failed trials followed, during which Nelson was represented by counsel. Before the jury was empaneled for the first trial, the trial court granted Nelson's request for a mistrial due to a discovery issue. Before the second trial began, the trial court granted Nelson's motion to exclude some of Nelson's prior acts, including Nelson's threatened suicide and an incident when Nelson hit RJN. Neither party introduced testimony about the marijuana growing operation. The jury was unable to reach a verdict, and therefore the trial court declared a mistrial.

---

[1] We refer to the minor children by their initials to protect their privacy.

[2] RCW 9A.36.021(1)(c).

Nelson represented himself with standby counsel in the third trial, which began on April 15, 2014. Voir dire took place on the record. During voir dire, juror 7 said he was a "maintenance mechanic" for the Department of Social and Health Services (DSHS). 2 VRP (April 15, 2014) at 207. Peremptory challenges appear to have taken place in open court, although they were not spoken aloud. The parties dismissed 12 jurors in written peremptory challenges.

Nelson moved in limine generally to exclude all ER 404(b) evidence. The State told the trial court that it would elicit the ceiling-stabbing testimony only if other testimony about the marijuana growing operation came in, to explain that Nelson became paranoid about others stealing his marijuana.

Nelson told the court that he stabbed holes in the ceiling "probably a couple of weeks preceding the incident." 2 VRP (April 15, 2014) at 134. Regarding the ceiling-stabbing evidence, the court said that this evidence "may be in some sense part of . . . the res gestae of all of this. . . . [P]oking a hole in the ceiling is not a crime, obviously, but it is odd." 2 VRP (April 15, 2014) at 136-37. The trial court made a conditional ruling, noting that the admissibility of this evidence depended on the extent to which the testimony exposed Nelson's belief that his children were stealing his marijuana.

The State also revealed that it planned to elicit the fact that Nelson had threatened to commit suicide in the days prior to the assault. It argued that this evidence was relevant as res gestae to explain Nelson's paranoia. Apparently referring both to the holes in the ceiling and the suicide threat, the court found that the "activities of the defendant in the days leading up to [the

assault] . . . would be part of the res gestae, considering the children were talking about a pattern of behavior causing them to have fear of the defendant."  2 VRP at 142-43.  The court concluded:

> It sounds like we are going to include the holes in the ceiling, so I don't know that this is 404(b) evidence in the sense that it is evidence of some prior conduct or bad act to show conformity of that.  Rather, it is part of the . . . event itself that extended over a period of time.

2 VRP (April 15, 2014) at 143.  The court accordingly denied Nelson's motion in limine to exclude all ER 404(b) evidence.

At trial, RJN testified to the facts given above.  His younger sister REN also testified. REN saw Nelson struggle with RJN over the backpack, then search through the backpack.  She saw Nelson pick up a knife and point it at RJN from a distance of about a foot and a half.  She testified that RJN looked "[t]errified, scared" while Nelson held the knife, and that RJN backed away.  7 VRP (April 23, 2014) at 696-97.

The jury convicted Nelson as charged.  The jury further found the existence of several aggravating factors.

Before sentencing, Nelson filed a pro se document entitled "Writ of Habeas Corpus." Clerk's Papers (CP) at 172.  In this document, he argued several bases for relief from his conviction.  On May 9, the day of sentencing, Nelson filed a supplemental document in support of his habeas corpus writ.

At the sentencing hearing, Nelson appeared with his standby counsel, Dana Ryan.  He notified the court that he had filed the writ of habeas corpus.  The trial court inquired whether he was appearing pro se or represented by counsel.  Nelson equivocated, saying: "I still represent

myself, I guess. I would like to address the writ of habeas corpus, if possible." VRP (May 9, 2014) at 6. The trial court told Nelson: "Mr. Ryan is remaining your stand-by counsel only now. You are not going to stand on one foot on the maybe he is and maybe he is not. Either he is in right now or he is not." VRP (May 9, 2014) at 6. Nelson asked whether Ryan would address the habeas corpus issue, and Ryan told the court he was "not prepared to address that." VRP (May 9, 2014) at 6. The trial court told Nelson: "I am prepared to go forward with sentencing. You can bring your writ of habeas corpus anytime you want, but I'm going to do sentencing now. . . . If you want to go ahead with something else, I'll be glad to hear you, but if that's the case, you are representing yourself." VRP (May 9, 2014) at 6-7.

Nelson reiterated, "I would like to have the habeas corpus heard is all." VRP (May 9, 2014) at 7. The trial court told him to "[g]o ahead." VRP (May 9, 2014) at 7. Nelson said: "I would like for Mr. Ryan here to help me with the habeas corpus if he is, in fact, my counsel. I would gladly accept his help if he is able to provide it." VRP (May 9, 2014) at 7. Ryan emphasized that he had prepared and was willing to present a notice of appeal and an order for indigency, but that he would not argue the habeas corpus writ on Nelson's behalf. The trial court reiterated that Nelson had the choice between representing himself and accepting the representation of Ryan, who would not present the habeas corpus petition. Nelson elected to be represented, saying, "I guess I will file [the petition] and let [Ryan] represent me, if that's okay with the court." VRP (May 9, 2014) at 8. The court responded, "That's fine." VRP (May 9, 2014) at 8. The sentencing hearing then proceeded with Ryan representing Nelson; Ryan did not argue Nelson's habeas corpus petition.

At the end of the sentencing hearing, Nelson again raised the habeas corpus issue. He said, "I would like to add a supplemental argument to my habeas corpus that was denied by the court." VRP (May 9, 2014) at 22-23. The trial court told him: "I haven't ruled on anything. I haven't denied anything. . . . I haven't made any ruling on it. There was no petition filed. It was just a writ." VRP (May 9, 2014) at 23. Nelson appeals.

ANALYSIS

I. PUBLIC TRIAL

Nelson argues that the trial court violated his right to a public trial when it took peremptory challenges in private. We disagree.[3]

A.      *Standard of Review*

A defendant has a constitutional right to a public trial. *State v. Love*, 183 Wn.2d 598, 604, 354 P.3d 841 (2015). We review alleged violations of the public trial right de novo. *Love*, 183 Wn.2d at 604. When reviewing a public trial right claim, we engage in a three-step inquiry. *Love*, 183 Wn.2d at 605. First, we consider whether the public trial right attaches to the proceeding at issue. *Love*, 183 Wn.2d at 605. Second, if the right attaches, we consider whether the courtroom was closed. *Love*, 183 Wn.2d at 605. Third, we ask whether the closure was justified. *Love*, 183 Wn.2d at 605. A closure is generally not justified if the trial court does not

---

[3] The State argues that Nelson waived this argument by failing to raise it below. We disagree. A defendant's failure to object to a public trial violation at the time of trial does not preclude appellate review under RAP 2.5, because a public trial violation is structural error. *State v. Paumier*, 176 Wn.2d 29, 36-37, 288 P.3d 1126 (2012).

first conduct a *Bone-Club* analysis on the record. *State v. Smith*, 181 Wn.2d 508, 520, 334 P.3d 1049 (2014); *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

B.      *No Closure Occurred*

Nelson argues that the trial court closed the courtroom during peremptory challenges by allowing the parties to exercise peremptory challenges by passing a piece of paper back and forth, and not announcing which party excused which juror. This argument is foreclosed by our Supreme Court's recent decision in *Love*, 183 Wn.2d at 607. In *Love*, the court held that no closure occurred where the parties exercised peremptory challenges silently by exchanging a written list of jurors because the public had the opportunity to oversee this portion of jury selection. 183 Wn.2d at 607. The court held that "written peremptory challenges are consistent with the public trial right so long as they are filed in the public record." 183 Wn.2d at 607.

Here, the record reflects that the parties exercised peremptory challenges in open court, and the court announced the remaining jurors in numerical order, without revealing which party struck particular jurors. The information about how the challenges were exercised is in the record because the record includes a list of the stricken jurors, and identifies which party struck each juror. Because the courtroom was not closed and the information about how the strikes were exercised was available for public scrutiny, the procedure did not violate Nelson's right to a public trial.

## II. EVIDENTIARY CHALLENGES

Nelson argues that the trial court erred by admitting evidence that Nelson threatened suicide and punched holes in his ceiling in the days before assaulting his son. He argues that the

trial court misapplied the res gestae rule and failed to make proper findings on the record before admitting this evidence. Assuming without deciding that the trial court erred, the error was harmless.

Improper admission of evidence constitutes harmless error if the evidence is of only minor significance in reference to the evidence as a whole. *State v. Rodriguez*, 163 Wn. App. 215, 233, 259 P.3d 1145 (2011). An erroneous admission of evidence does not amount to reversible error unless the court determines within reasonable probabilities that the outcome of the trial would have been materially affected had the error not occurred. *State v. Goggin*, 185 Wn. App. 59, 69, 339 P.3d 983 (2014), *review denied*, 182 Wn.2d 1027 (2015). Where, as here, the alleged error is not of constitutional magnitude, the defendant bears the burden of showing that prejudice resulted. *State v. Barry*, 183 Wn.2d 297, 304, 352 P.3d 161 (2015).

Here, Nelson fails to show that the admission of testimony about the holes he punched in the ceiling and his suicide threat prejudiced the jury's verdict.[4] The evidence of Nelson's guilt was strong: RJN testified that Nelson brandished a knife at him and caused him fear. REN corroborated this story, testifying that Nelson pointed the knife at RJN, and that RJN appeared

---

[4] Nelson argues that this error was not harmless because in the previous trial, wherein evidence of the suicide and holes in the ceiling were not admitted, the jury was unable to reach a verdict. Wash. Court of Appeals oral argument, *State v. Nelson*, No. 46239-7-II (Dec. 8, 2015), at 4 min., 50 sec. through 5 min., 20 sec. (on file with court). We disagree because there were other differences in the two trials. Significantly, Nelson appeared pro se in the trial resulting in his conviction, whereas he was represented by counsel in the previous mistrial. Additionally, Nelson elicited testimony about the marijuana growing operation in this trial, unlike in the mistrial. Thus, Nelson's argument that he has established prejudice by merely showing a different outcome in this trial fails.

terrified.  Nelson cannot show that the result of the trial would have differed absent admission of

the contested evidence.  Thus, we hold that any evidentiary error was harmless.

### III.  REQUEST FOR WRIT OF HABEAS CORPUS

Nelson argues that the trial court abused its discretion by failing to rule on Nelson's

petition for a writ of habeas corpus.[5]  He contends that the trial court abused its discretion in

denying his habeas corpus petition without a hearing because the court completely refused to

exercise its discretion, instead refusing to consider the petition.[6]  We hold that the trial court did

not err.

Superior court judges have the power to issue writs of habeas corpus on petition by a

person in actual custody in their respective counties.  WASH. CONST. art. IV, § 6 (amend. 65).

"Every person restrained of his or her liberty under any pretense whatever, may prosecute a writ

of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when

illegal."  RCW 7.36.010.  CrR 7.8(c)(2) applies to habeas corpus petitions filed in the superior

court that seek postconviction relief, "if not directly then by analogy."  *Toliver v. Olsen*, 109

Wn.2d 607, 612-13, 746 P.2d 809 (1987).  Upon initial consideration, the trial court may deny a

---

[5] The record below, as well as the briefs on appeal, refer to the document Nelson filed as a "writ" of habeas corpus.  But a petitioner files a *petition* for a writ; the writ is the order that the trial court may issue.  *See In re Pers. Restraint Petition of Runyan*, 121 Wn.2d 432, 439, 853 P.2d 424 (1993).

[6] The State argues that Nelson's habeas corpus petition was not perfected because it was not properly served.  But because the State did not argue below that Nelson failed to properly serve the appropriate parties, it may have waived this argument.  *See Lybbert v. Grant County*, 141 Wn.2d 29, 38-39, 1 P.3d 1124 (2000); RAP 2.5.  Because we resolve this issue on other grounds, we do not rule on the merits of the State's service claim.

petition or motion without a hearing if the facts alleged in the affidavits do not establish grounds for relief. CrR 7.8(c)(2). Alternatively, the trial court may transfer the motion to the Court of Appeals for consideration as a personal restraint petition (PRP). CrR 7.8(c)(2). Otherwise, the court must hold a hearing on the matter. CrR 7.8(c)(2).

We review a trial court's ruling on a petition for habeas corpus for an abuse of discretion. *Fathers v. Smith*, 25 Wn.2d 896, 899-900, 171 P.2d 1012 (1946). And we review a trial court's ruling on a CrR 7.8 motion for an abuse of discretion. *State v. Swan*, 114 Wn.2d 613, 642, 790 P.2d 610 (1990).

We hold that the trial court did not err because Nelson made the choice at sentencing to be represented by Ryan, who clearly stated that he would not argue the petition. The trial court repeatedly asked Nelson whether he wanted to represent himself and argue the writ that day, or instead be represented by Ryan during sentencing. Knowing that Ryan would not argue the petition, Nelson chose to be represented. The trial court made clear that Nelson was welcome to bring his petition whenever he wanted, but that it would not happen during sentencing so long as Nelson chose to be represented. Given these facts, it is incorrect for Nelson to argue that the trial court "utterly fail[ed] to exercise its discretion" in refusing to rule. Br. of Appellant at 30. Instead, the record shows that Nelson chose to forego his habeas corpus argument in order to be represented by counsel for sentencing.

Thus, the trial court did not abuse its discretion. Instead, the superior court simply refused to consider the petition at sentencing because Nelson elected to be represented by

counsel who was not prepared to argue the petition. Nelson may file a PRP collaterally attacking his conviction within one year of finality of his judgment and sentence. RCW 10.73.090.

## IV. STATEMENT OF ADDITIONAL GROUNDS

In a pro se SAG, Nelson claims that the trial court violated his right to represent himself, violated his right to a speedy trial, and violated his right to an impartial jury. We disagree.

A.    *Self-Representation*

Nelson contends that the trial court violated his right to self-representation by refusing to let him appear pro se. This argument appears to refer to the first mistrial, rather than the conviction from which Nelson now appeals. "A case is technically moot if the court can no longer provide effective relief." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). Here, Nelson contends that the trial court violated his rights in June of 2013 by not ruling on his motion to appear pro se, but Nelson did appear pro se in the trial from which he now appeals. We cannot provide him relief from any earlier denials of his right to appear pro se, because he did appear pro se in the trial at which he was convicted. Thus, this issue is moot.

B.    *Speedy Trial*

Nelson argues that the trial court violated his constitutional right to a speedy trial by granting 20 continuances. We disagree.

Both the federal and state constitutions guarantee the right to a speedy public trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "[T]he constitutional right to speedy trial attaches when a charge is filed or an arrest is made, whichever occurs earlier." *State v. Higley*, 78 Wn.

App. 172, 184, 902 P.2d 659 (1995).  The constitutional right is violated at the expiration of a

reasonable time.  *Higley*, 78 Wn. App. at 1885.

To prevail on a claim of an alleged violation of the constitutional right to a speedy trial,

Nelson must establish actual prejudice from the delay, or show that the delay was so lengthy that

prejudice must be conclusively presumed.  *State v. Ollivier*, 178 Wn.2d 813, 826, 312 P.3d 1

(2013).  Whether a delay is presumptively prejudicial is a fact-specific determination that cannot

be reduced to a specific time period, but courts tend to presume prejudice in cases involving

delays of eight months or more.  *State v. Iniguez*, 167 Wn.2d 273, 283, 290, 217 P.3d 768

(2009).  If the defendant alleges that the delay is presumptively prejudicial, then we use the

balancing test set out in *Barker v. Wingo*, 407 U.S. 514, 528-32, 92 S. Ct. 2182, 33 L. Ed. 2d 101

(1972), to determine whether a constitutional speedy trial violation has occurred.  *Ollivier*, 178

Wn.2d at 827-28.  Among other things, this balancing test considers the reasons for the delay.

*Ollivier*, 178 Wn.2d at 831.  For example, where the State has deliberately delayed trial or where

court congestion has greatly prolonged it, a speedy trial violation is more likely.  *Ollivier*, 178

Wn.2d at 832.

Here, Nelson makes no argument as to how the continuances prejudiced him.

Furthermore, he fails to argue or establish that his trial continuances were presumptively

prejudicial.  Nelson's defense counsel (in the previous trials before Nelson represented himself)

requested most of these continuances, despite Nelson's personal objections.  Two delays

occurred because courtrooms were not available, but these delays totaled only six days.  The

record does not demonstrate that the State deliberately delayed the trial, and Nelson presents no

12

evidence of deliberate delay. Because Nelson does not argue or establish, and the record does not demonstrate, that the trial delays were presumptively prejudicial, we do not use the *Barker* balancing test to determine whether a speedy trial violation occurred. We reject Nelson's speedy trial violation claims.

C.      *Impartial Jury*

Nelson contends that the trial court violated his right to an impartial jury by empaneling a juror who may have had information about Nelson. He argues that juror 7 misrepresented his occupation at DSHS: Nelson contends that although juror 7 told the court he was a maintenance mechanic, he worked at the Division of Child Support. He also alleges that juror 7's coworker at DSHS, who was Nelson's caseworker in a Child Protective Services (CPS) case, sat in the audience of the courtroom at some point. We are unable to review this claim.

This claim depends on facts outside the record. Nelson provides a copy of what appears to be the results of a juror questionnaire as an exhibit to his SAG. But this document does not appear in our record, nor does our record contain any support for Nelson's assertions that juror 7 misrepresented his employment or that a CPS caseworker sat in the audience. We cannot consider matters outside the record on a direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995); RAP 10.10(c). Such matters are more appropriate for a PRP. We do not consider this argument.

D.      *Other Contentions*

Nelson mentions two other errors in passing: he cites the right of habeas corpus, without arguing how or when this right was violated, and he states that the trial judge "clearly neglected

his judicial responsibility." SAG at 2. We addressed the trial court's ruling on Nelson's petition for habeas corpus above. But if Nelson's issue is different from that presented in his appellate brief, his SAG does not clarify what the specific issue is. Regarding the neglect of judicial responsibility, Nelson does not say what the trial judge did to neglect this responsibility. These allegations fail to inform us of the "nature and occurrence" of these alleged errors. RAP 10.10(c). Therefore, we do not consider them.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Maxa, J.