[No. 5685–2–II.   Division Two.   June 2, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. GREGORY
FRANCIS POIRIER, *Appellant.*

*Jeffrey A. Robinson,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Thomas D. Din-
widdie, Deputy,* for respondent.

REED, J.—Gregory Poirier appeals his Pierce County conviction of unlawful possession of cocaine, contending the trial court erred in refusing to suppress the only evidence. We agree and reverse.

We do not agree, however, with Poirier's initial contention that the charges should have been dismissed with prejudice because of a violation of CrR 3.3. Poirier argues that, because he was arrested September 13, 1980, and released on posting a bail bond, he was being held to answer; thus the speedy trial clock of CrR 3.3 commenced running at that time. This argument might have merit had not the State on September 15 filed a "No Charges Filed" document pursuant to CrR 3.2A(c)(2). That rule states in part: "If no complaint, information or indictment has been filed by the time set for release or reappearance, the defendant shall be . . . deemed exonerated from all conditions of release." Defendant was thus not held to answer, *i.e.*, subjected to conditions of release, until he appeared February 23, 1981, to plead to an information filed February 9, 1981. At that time his trial date was set for April 1981, well within the applicable time span. His motion to dismiss was properly denied.

Nor do we find persuasive defendant's claim that his Sixth Amendment right to a speedy trial was violated by the 148–day delay between arrest and the filing of the information. *See United States v. MacDonald*, 456 U.S. 1, 71 L. Ed. 2d 696, 102 S. Ct. 1497 (1982). Neither does defendant demonstrate any actual prejudice which would constitute an infringement on his due process rights under the Fifth and Fourteenth Amendments. *United States v. Marion*, 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971); *see also State v. Johnston*, 27 Wn. App. 73, 615 P.2d 534 (1980).

We are in agreement, however, with Poirier's final contention that his arrest was improper and that the evidence of his guilt should have been suppressed. Although the evidence adduced at the suppression hearing arguably would support different and stronger findings, particularly as

regards the officers' experience and the physical appearance of the objects exchanged by Poirier and another defendant, we must accept the facts as reflected in the findings prepared by the State and entered by the suppression judge. In doing so, we are not unmindful of *State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), which holds that "[w]hile the findings of the trial court following a suppression hearing are of great significance to a reviewing court, the constitutional rights at issue [warrantless search] require us to make an independent evaluation of the evidence."

We take *Daugherty* to mean that, where a defendant contends evidence was taken in violation of his constitutional rights, and makes an appropriate challenge to the suppression court's findings, *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981), we are required to look behind the formal findings. When, however, the facts found do not support the conclusion to suppress, it is the State not the defendant who would seek to expand or enlarge upon its own product. Such is the case here. The State, unlike the defendant, has no fundamental right at stake. When the State prevails in a suppression hearing, it has a further obligation to prepare, present and have entered findings of fact and conclusions of law which will, standing alone, withstand an appellate court's scrutiny for constitutional error. CrR 3.6. *Cf. State v. Agee,* 89 Wn.2d 416, 419, 573 P.2d 355 (1977).

The issue, therefore, is whether the following facts establish probable cause to arrest Poirier.

I.

On or about the 13th day of September, 1980, officers Scott and Bennett of the Tacoma Police Department were working as security officers for a restaurant known as the Dynasty [*sic*].

II.

That on that date, the officers were standing in a position outside the business near an open door and observed defendant Poirier standing in the parking lot.

### III.

The officers then observed defendant Dimercurio arrive at the location of the restaurant in the parking lot. The defendant exited the vehicle and approached Mr. Poirier.

### IV.

The officers then observed Mr. Poirier and Mr. Dimercurio exchange items that appeared to be white envelopes or packages. Both defendants were then arrested and searched, and during said search a package of suspected cocaine and a package of money were removed from the defendants.

Although we agree the officers' suspicions were such that they may have been justified in approaching the two men to make inquiry, *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974), there is absolutely nothing in the court's findings which supports the existence of "specific and articulable facts" that a crime was being committed, and which would have warranted the use of force or a show of authority to detain either of the two men. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Consequently, the factual pattern, without more, falls far short of establishing probable cause to arrest. As noted in *State v. Gluck,* 83 Wn.2d at 426:

> Probable cause [to arrest] exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

We are mindful that what might appear to an ordinary citizen to be innocent conduct may fall within that class of cases commonly referred to as "street sales of drugs." *People v. Garrett,* 29 Cal. App. 3d 535, 104 Cal. Rptr. 829 (1972); *Cunha v. Superior Court,* 2 Cal. 3d 352, 466 P.2d 704, 85 Cal. Rptr. 160 (1970); *People v. Moore,* 69 Cal. 2d 674, 446 P.2d 800, 72 Cal. Rptr. 800 (1968). In such cases a police officer may be justified in believing he is observing criminal activity because of the particular location, the reputation of one or more of the participants, the nature of the

contact, and other actions of the parties, coupled with his experience and expertise. Here, however, the facts *as found by the suppression judge* do not establish that: (1) either party was known to the officer, or (2) drug sales or exchanges regularly took place in the Dynasties parking lot, or (3) the envelopes exchanged were particularly distinctive or characteristic of packaged drugs or narcotics, or (4) either party acted in a suspicious or furtive manner.

We conclude that an exchange between two persons unknown to the arresting officers of white envelopes or packages in plain view in an open parking lot, not itself known for frequent drug transactions, does not establish probable cause to arrest. Consequently, any search conducted as a mere incident to that arrest is unlawful and the fruits thereof must be suppressed.

It is so ordered.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied June 29, 1983.