[No. 17315-1-III.  Division Three.  November 18, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. GLEN RAY FULPS, *Appellant*.

936

*Alex B. Hernandez III*, for appellant.

*Gary J. Brueher, Prosecuting Attorney*, for respondent.

BROWN, J. — Glen R. Fulps appeals his conviction for possession of marijuana, arguing his speedy trial rights under CrR 3.3 and the constitution were violated. Further, he argues the trial court erred by failing to dismiss the charges due to confidential informant (CI) misconduct, failing to order production of the CI at a suppression hearing, and failing to suppress evidence due to violation of the "knock and announce" rule. We decide Mr. Fulps was not "held to answer" as that term is discussed in *State v. Parmele*, 87

Wn.2d 139, 142, 550 P.2d 536 (1976), when approximately four and one-half months elapsed after his release on cash bail before an information was filed, and another three weeks elapsed before he was arraigned. We reject Mr. Fulps's other contentions. Accordingly, we affirm.

## FACTS

On January 17, 1997, the Othello Police Department executed a search warrant at Mr. Fulps's residence. The warrant, issued the day before, permitted the officers to search for marijuana, drug paraphernalia and other materials used in processing, packaging and selling marijuana. The warrant was based on information provided by a CI. The CI told the officers Mr. Fulps was selling large amounts of marijuana from his residence. Based on this information, the CI was allowed to make a controlled buy.

When the officers arrived at Mr. Fulps's apartment, they could see him through the window. Officer Brian K. Taylor's report states that the lead officer then knocked on Mr. Fulps's door. Mr. Fulps was slow to answer, so the officer tried the door. Discovering it unlocked, he entered the apartment and announced the officers' presence. Mr. Fulps denied the officers knocked and announced their presence. Once inside, the police advised Mr. Fulps of his constitutional rights. He waived his right to remain silent and stated: "Sure, I'll tell you guys I smoke dope. Let me show you where it is." The police then located several bags of marijuana, weighing over 40 grams, two guns, scales, packaging material, a pipe and a roll of money consisting of $67. The money included marked money used in the controlled buy.

Mr. Fulps was arrested and taken to jail in Ritzville. The booking charge was possession of marijuana with intent to deliver. An Adams County District Court judge signed a "Statement of Arresting Officer and Preliminary Finding of Probable Cause" form that set cash bail at $3,000. Although the form is captioned for the Adams County

Superior Court, it did not contain a case number, provide any conditions of release, or set any time to appear back in court for further proceedings. Essentially, the form provided a police incident number and recited the facts set forth above. Mr. Fulps posted bail and was released the same day without personally appearing before the court.

No further proceedings occurred until June 5, 1997, when the State filed an information in superior court charging Mr. Fulps with one count of possession of marijuana over 40 grams and one count of possession with intent to deliver. Mr. Fulps was arraigned on June 30, where he pleaded not guilty, and trial was set for September 16. Mr. Fulps does not challenge the 25 days between the filing of the information and his arraignment.

Prior to trial, Mr. Fulps filed several motions to dismiss and/or suppress evidence, alleging the same issues he raises in his appeal. The trial court denied Mr. Fulps's motions, entering findings of fact and conclusions of law. Neither the State nor Mr. Fulps challenges the trial court's findings, making them verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). The court concluded there was no violation of Mr. Fulps's speedy trial rights under CrR 3.3 and the federal constitution because his speedy trial clock did not begin to run until the information was filed. The court also concluded Mr. Fulps did not have a right to know the identity of the CI, there was no CI misconduct, and the entry into Mr. Fulps's apartment was legal.

Following a bench trial on partial stipulated facts, the court convicted Mr. Fulps of possession of marijuana over 40 grams. This appeal followed.

ANALYSIS
Speedy Trial

The issue is whether the trial court erred by rejecting Mr. Fulps's speedy trial motion under either constitutional or procedural principles and concluding Mr. Fulps was not

"held to answer" for purposes of speedy trial calculations from January 17, 1997, when he was released on cash bail under these facts.

■ Whether to grant a motion to dismiss is left to the trial court's discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587, 71 A.L.R.5TH 705 (1997). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons." *Id.* (citing *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). For cases filed directly into superior court, CrR 3.3(c)(1) establishes the time limits for arraignment and trial. Generally, a defendant has a right to be arraigned within 14 days of the filing of the information and brought to trial for the crime charged within 90 days of his or her arraignment, if the defendant is not being held in custody.

■ First, we examine the State's contention that the filing of the information triggers the CrR 3.3 limitations when a defendant is subject to conditions of release. Disregarding other court rules and arguably applicable case law discussed next and assuming the facts most broadly in favor of Mr. Fulps, under CrR 3.3(c)(1) his constructive arraignment date would be June 5, 1997 plus 14 days, or June 19. Thus, because his trial date was set for September 16, 1997, it met the 90-day requirement of CrR 3.3(c)(1). Accordingly, the State is correct, but this begs the question posed by Mr. Fulps.

Mr. Fulps contends that he was "held to answer" from January 17, because he then posted cash bail. In *State v. Parmele*, 87 Wn.2d 139, 142, 550 P.2d 536 (1976), our Supreme Court, interpreting prior CrR 3.3, held the time for trial begins to run from the date the defendant is held to answer. Even though CrR 3.3 has been extensively and significantly amended since *Parmele*, we again look at this problem from Mr. Fulps's point of view.

Mr. Fulps was arrested on January 17, 1997, when a search warrant was executed at his home. He was taken immediately to jail. Probable cause was determined, pre-

sumably under CrR 3.2A. Mr. Fulps was released on cash bail. Apparently, the sole authority for Mr. Fulps's release was the district court judge's signature at the bottom of the "Statement of Arresting Officer and Preliminary Finding of Probable Cause" form. The form simply provided the affiant's bail recommendation in addition to the probable cause information.

Notably, no specific order for release is set forth in the form or can be found in this record. The form and the procedure used to secure release are thus, conspicuously deficient under CrR 3.2. Most important here, the form does not mention any time for reappearance or set any conditions for release. It is thus, indefinite as to term and purpose. Further, no preliminary appearance was conducted under CrR 3.2B, as would be expected in the normal course of events. The next date that action is noted in this record is June 5, 1997, when the form together with an information was filed into the superior court.

The omission of a formal preliminary appearance does not alter its requirements or the application of its underlying principles. CrR 3.2B(c)(1) partly provides: "Unless an information or indictment is filed or the affected person consents in writing or on the record in open court, a defendant shall not be detained in jail or *subjected to conditions of release* for more than 72 hours after the defendant's detention in jail or release on conditions, whichever occurs first." (Emphasis added.) CrR 3.2B(c)(2) exonerates a defendant from conditions of release if no complaint, information or indictment is filed by the end of the 72-hour period. "If no complaint, information or indictment has been filed by the time set for release or reappearance, the defendant shall be immediately released from jail or *deemed exonerated from all conditions of release.*" CrR 3.2B(c)(2) (emphasis added).

Here, because no preliminary appearance was conducted within the terms of CrR 3.2B, and no information was filed within the 72-hour time requirements of the rule, Mr. Fulps was no longer subject to court conditions of release under CrR 3.2B(c)(1). Further, because he was not in jail at the

expiration of the 72-hour period, he was "deemed exonerated from all conditions of release" under CrR 3.2B(c)(2). The latter provision operates consistently to execute the requirements of the former provision.

Additionally, under *Parmele*, contrary to Mr. Fulps's argument, he cannot be considered "held to answer." Mr. Fulps's status after the 72-hour period is similar to that of Mr. Parmele. Mr. Fulps's release was conditioned by implication under the applicable court rules upon the filing of an information just as in the case of Mr. Parmele. *Parmele*, 87 Wn.2d at 142-43. Any ambiguity in Mr. Fulps's status is thus resolved consistently with *Parmele*, and the interests of justice to avoid the absurd result of necessarily assuming Mr. Fulps was released for an indefinite period. *Id.* To hold otherwise would be to place suspects in Mr. Fulps's position "on a treadmill to oblivion." *Id.* To hold otherwise would be to condone amorphous restraints on a defendant's liberty; a result severely criticized in *Parmele*. *Id.*

Similarly, in *State v. Poirier,* 34 Wn. App. 839, 840, 664 P.2d 7 (1983), a defendant argued because he was arrested and then released by posting a bail bond, he was being held to answer from the time of his release. In response, Division Two held Mr. Poirier was not held to answer in the sense that he was subjected to conditions of release because he was "deemed exonerated from all conditions of release" by operation of a prior court rule. *Id.* Thus, Mr. Fulps's speedy trial requirements did not apply until the June events placed both an information and Mr. Fulps before the court.

In sum, we conclude Mr. Fulps was not "held to answer" as that term is used in *Parmele*. Thus, Mr. Fulps was treated under CrR 3.3(c)(1) as "not detained in jail or subjected to conditions of release." The speedy trial clock did not begin to run until his arraignment, which was within 14 days after his initial appearance following the filing of the information. CrR 3.3(c)(1). Mr. Fulps's case was set within 90 days of his arraignment, and he waived any claim to speedy trial violations beyond the 90 days. Accord-

ingly, we hold Mr. Fulps's speedy trial rights under CrR 3.3 have not been violated under these facts. Mr. Fulps's speedy trial requirements did not apply until the June events placed both an information and Mr. Fulps before the court.

■■■■ Mr. Fulps also contends his Sixth Amendment right to a speedy trial was violated. The constitutional right to a speedy trial is violated after a reasonable, not a fixed time. *State v. Monson*, 84 Wn. App. 703, 711, 929 P.2d 1186 (citing *State v. Higley*, 78 Wn. App. 172, 184-85, 902 P.2d 659, *review denied*, 128 Wn.2d 1003 (1995)), *review denied*, 133 Wn.2d 1015 (1997). The threshold for establishing a constitutional violation is high; it requires a weighing of four factors: " '[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' " *In re Personal Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). Mr. Fulps was arrested on January 17, 1997. Assuming for argument the clock began to run on that date, it was eight months from January 17 to the day he entered his first waiver of speedy trial rights. Eight months is not unreasonable. *See Benn*, 134 Wn.2d at 920 (defendant charged in May 1988 and brought to trial in March 1990).

Further, the delay resulted simply from the State's decision not to immediately file charges in January 1997; no ill motive is alleged. Mr. Fulps did not assert his grievance to the trial court until after what he now claims was excessive delay. Mr. Fulps now merely asserts the loss of use of the cash bail in the interim period between January and June 1997 caused him prejudice even though under our analysis all conditions were exonerated in January 1997. When the conditions of bail are exonerated, assuming there are any, the court must give the cash bail back to the defendant. *State v. Paul*, 95 Wn. App. 775, 778, 976 P.2d 1272, 1274 (1999).

Here, by Mr. Fulps's delay in asserting his claimed right, the trial court did not have an opportunity to first address the concern he presents in this appeal. In this sense, Mr.

Fulps created any resulting prejudice by the loss of use of the cash bail money by not seeking its return. While the court held the bail, it was still Mr. Fulps's property. *Id.* Mr. Fulps has not shown he was prejudiced in his ability to mount a defense to the charge because of the delay. Accordingly, after balancing the above factors, we conclude Mr. Fulps's Sixth Amendment right to speedy trial was not violated.

As a final note, both parties and the trial court discussed *State v. Phillips*, 66 Wn. App. 679, 833 P.2d 411 (1992). This opinion was vacated by the Supreme Court almost four years prior to Mr. Fulps's trial. *State v. Phillips*, 121 Wn.2d 1001, 847 P.2d 919 (1993). The parties do not raise the issue of whether the court abused its discretion or committed reversible legal error by relying on *Phillips*. However, in light of our above discussion of the application of the court rules and case law, this oversight does not affect our reasoning or amount to an abuse of trial court discretion or reversible error as a matter of law. One of the court's conclusions of law states that the court did not have the power to act until it had "both the charge and the defendant" before it, citing *Phillips* to support this conclusion. While *Phillips* was vacated, there is still the authority discussed above to support the court's decision.

Additionally, CrR 3.3(a) states:

> It shall be the responsibility of the court to ensure a trial in accordance with this rule to each person *charged* with having committed a crime.

(Emphasis added.) According to this rule, the trial court does not have the responsibility to ensure a speedy trial until it has a person and a charge before it. The trial court's conclusion fairly reiterates this rule.

In sum, even assuming the trial court was mistaken when citing *Phillips*, we may still reject the trial court's reasoning and affirm on other grounds established in the record. *State v. Frodert*, 84 Wn. App. 20, 25, 924 P.2d 933 (1996), *review denied*, 131 Wn.2d 1017 (1997). Our above reason-

ing fits squarely within the parameters of the rule just stated in *Frodert*.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion and the dissent will be printed in the Washington Appellate Reports and that the remainder, having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY, J., concurs.

SCHULTHEIS, C.J. (dissenting) — Given the unusual facts of this case I would not find it necessary to reach the merits of Glen Fulps's arguments regarding alleged misconduct by the confidential informant or the alleged law enforcement violation of the knock and announce rule. I would reverse and dismiss the case on the speedy trial violation pursuant to CrR 3.3.[1]

The plain language of CrR 3.3 does not directly address the issue presented by Mr. Fulps, i.e., when a defendant is released from jail on cash bail with no release order entered with the court. "When CrR 3.3 is silent, however, Washington courts have often looked to the *ABA [American Bar Association] Standards Relating to Speedy Trial* as an interpretive supplement." *State v. Fladebo*, 113 Wn.2d 388, 392, 779 P.2d 707 (1989).

> "The time for trial should commence running, without demand by the defendant, as follows:
>
> "(a) from the date the charge is filed, except that if the defendant has been continuously held . . . on bail . . . then the time for trial should commence running from the date the defendant was held to answer;"

*Id.* (quoting 2 AMERICAN BAR ASS'N, STANDARDS FOR CRIMINAL

---

[1]The operative language of CrR 3.3, as relevant here, states in part:

"(c) **Time for Arraignment and Trial.**

"(1) *Cases Filed Directly in Superior Court.* . . . A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment."

JUSTICE, STANDARD 12-2, at 12-17 (2d ed. 1980)). More recently, the court in *State v. Harris*, 130 Wn.2d 35, 40, 921 P.2d 1052 (1996), stated:

> The ABA standard cited in [*State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978)] currently exists as 2 AMERICAN BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE STD. 12-2.2 (2d ed. 1980).
>
> The ABA standard adopted by *Peterson* has been cited as controlling law in many subsequent cases. *See, e.g., State v. Fladebo*, 113 Wn.2d 388, 392, 779 P.2d 707 (1989); *State v. Anderson*, 94 Wn.2d 176, 183, 616 P.2d 612 (1980); *State v. Austin*, 59 Wn. App. 186, 201, 796 P.2d 746 (1990); *State v. Bradley*, 38 Wn. App. 597, 599, 687 P.2d 856, *review denied*, 102 Wn.2d 1024 (1984). Even though the ABA standard adopted in *Peterson* cannot be found in CrR 3.3, standard 12-2.2 has been incorporated into the rules through *Peterson's* adoption of the standard and *Fladebo's* continued adherence to it. CrR 1.1 ("These rules . . . shall be interpreted *and supplemented* in light of the common law and the decisional law of this state." (emphasis added)); *see also State v. Greenwood*, 120 Wn.2d 585, 595, 845 P.2d 971 (1993).

Relying on *Fladebo*, I respectfully disagree with the majority's conclusion that Mr. Fulps was not "held to answer" for purposes of speedy trial calculations from January 17, 1997, when he was released from jail on cash bail. However, I do agree with the majority's conclusion that the procedure and form used to secure Mr. Fulps's release were "conspicuously deficient under CrR 3.2." Majority at 940. That rule states:

> **Order for Release.** A court authorizing the release of the accused under this rule *shall* issue an appropriate order containing a statement of the conditions imposed, if any, *shall* inform the accused of the penalties applicable to violations of the conditions imposed, if any, *shall* inform the accused of the penalties applicable to violations of the conditions of the accused's release and *shall* advise the accused that a warrant for the accused's arrest may be issued upon any such violation.

CrR 3.2(g) (emphasis added).

Mr. Fulps was not given an order of release, which would have set forth his mandatory due process right to notice of the conditions of his release and more importantly, the penalties associated with violation of those conditions. Mr. Fulps apparently did not even receive a preliminary hearing. Nowhere in the record does it state that Mr. Fulps was informed that his failure to personally appear at future court hearings could result in the loss of his bail money and/or the issuance of a bench warrant for his arrest. Nor was he informed of the obligatory language found in CrR 3.2B(c)(2), which states, in part: "If no complaint, information or indictment has been filed by the time set for release or reappearance, the defendant shall be immediately released from jail or *deemed exonerated from all conditions of release.*" (Emphasis added.)

The majority reasons that when no information was filed at the expiration of the 72-hour period, by operation of law Mr. Fulps was deemed exonerated from all conditions of release pursuant to CrR 3.2B(c)(2). The majority infers that, after 72 hours, Mr. Fulps had an affirmative duty to contact the superior court to request the return of his bail money. For this reason the majority concluded Mr. Fulps was not "held to answer" during the nearly six months it took the State to file charges against him.

The majority cites *State v. Poirier*, 34 Wn. App. 839, 840, 664 P.2d 7 (1983), as support for its conclusion. I respectfully disagree. The *Poirier* court stated:

> We do not agree, however, with Poirier's initial contention that the charges should have been dismissed with prejudice because of a violation of CrR 3.3. Poirier argues that, because he was arrested September 13, 1980, and released on posting a bail bond, he was being held to answer; thus the speedy trial clock of CrR 3.3 commenced running at that time. *This argument might have merit had not the State on September 15 filed a "No Charges Filed" document pursuant to CrR 3.2A(c)(2).* That rule states in part: "If no complaint, information or indictment has been filed by the time set for release or reappearance, the defendant shall be . . . deemed exonerated from all conditions of release." Defendant was thus not held to

answer, *i.e.*, subjected to conditions of release, until he appeared February 23, 1981, to plead to an information filed February 9, 1981.

*Id.* (emphasis added). *Poirier* is distinguishable in that Mr. Fulps was required to pay $3,000 cash to be released on bail while Mr. Poirier posted a bond. Next, unlike Mr. Poirier, Mr. Fulps did not receive any form of notice that the State would not be filing charges against him at that time. Finally, Mr. Fulps did not receive notice that he was exonerated from any conditions imposed and was therefore entitled to have his bail money returned. *State v. Paul*, 95 Wn. App. 775, 778, 976 P.2d 1272 (1999).

It appears the trial court was also concerned about the lack of due process shown Mr. Fulps. During its decision on Mr. Fulps's motion to dismiss the trial court said:

It's clear from the record that *Mr. Fulps*, as the phrase is defined in *State vs. [Parmele*, 87 Wn.2d 139, 550 P.2d 536 (1976)], *has been held to answer since the 17th of January, 1997.* It would appear that he never did actually appear in District Court. Apparently he was arrested at some point and had posted bail, which I believe was around the 17th of January. Nothing occurred then until this matter was trialed [sic] in June of '97, the 5th, by Information in Superior Court. There was a preliminary finding of probable cause and also setting of bail by Judge Dubois' preliminary hearing, if you will, in District Court in Othello.

I think clearly we can all agree that someone dropped the ball, whether it be the District Court Judge or whether it be the Prosecutor's Office, or a combination, but someone did. Because what's supposed to happen on the preliminary appearance is . . . once the person is arrested and bail set, you have to bring them in. . . .

The Court Rules indicate that the Court is supposed to make provisions for the defendant to reappear or appear for the first time if that's the case in District Court within the 72-hour period. . . . Now, in *Parmaly* [sic] the order itself setting the bail indicated that if the charges weren't filed in 72 hours, the bond was exonerated . . . . It's over until the Prosecutor

decides to refile. That would have been a process that could have been followed here, but wasn't.

. . . But clearly, once the bail was set, the Prosecutor's office if they weren't there needed to be notified, you have 72 hours to do something here or I'm exonerating the bail. . . . That didn't occur here. So unfortunately for Mr. Fulps *he has been held to answer* [as] that term suggests and is defined in *Parmaly* [sic] and some of the other cases.

. . . .

. . . There's no question there was not compliance with the Court Rules. However, this Court doesn't have any authority, I don't believe, under the present 3.3 rule to—there's no basis for a sanction or dismissing the charge because the Court didn't have control over the cause of action and the defendant until June [when the information was filed]. . . .

. . . I think under the status of the present rule and the [*State v. Phillips*, 66 Wn. App. 679, 833 P.2d 411 (1992), *vacated*, 121 Wn.2d 1001, 847 P.2d 919 (1993)] case tell me that I cannot dismiss the charges.

Report of Proceedings at 22-27 (Sept. 4, 1997) (emphasis added). Because there was no release order and no order exonerating the charges and returning the bail money the trial court determined that Mr. Fulps had been "held to answer" since January 17, 1997. I agree. Pursuant to ABA Standard 2.2, the 90-day speedy trial rule should have commenced that day and continued until an order exonerating the charge and/or conditions of release ($3,000 cash) was entered. *Fladebo*, 113 Wn.2d at 392.

Several policy reasons also underlie my conclusion. Court rules should be construed to advance the purposes for which they were enacted. *In re Discipline of McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). The purpose behind the speedy trial rule (CrR 3.3) is to provide "a *prompt* trial for the defendant once prosecution is initiated." *State v. Edwards*, 94 Wn.2d 208, 216, 616 P.2d 620 (1980). This rule does not authorize a long delay in bringing a defendant before the court to answer a charge filed

nearly six months after his release from jail on an arrest warrant, especially when the court continues to hold $3,000 cash that rightfully belongs to the defendant.

CrR 1.2 provides the criminal rules "shall be construed to secure . . . the elimination of unjustifiable expense and delay." The procedural errors in this case were very expensive to Mr. Fulps. Charges should have been filed within 72 hours or the case should have been dismissed with Mr. Fulps's bail money returned to him. Since neither of these events occurred, Mr. Fulps was being held to answer for his crime since he was released from jail. "The superior court speedy trial rules were not designed to be a trap for the unwary." *Fladebo*, 113 Wn.2d at 394. If the State (purposely or accidentally) chose not to dismiss the case, then CrR 3.3 applies, commencing January 17, 1997, the day the court took possession of Mr. Fulps's bail money.

Finally, the majority cites the language contained in CrR 3.3(a)[2] as authority for the trial court's conclusion that it did not have jurisdiction to grant Mr. Fulps's motion to dismiss. I disagree and cite the same rule as authority that it was well within the discretion of the trial court to dismiss the charge on a speedy trial rule violation. By its own language, the *court* (not Mr. Fulps) had the responsibility of ensuring a trial in accordance with the speedy trial rule. The *court* retained possession of Mr. Fulps's bail money for nearly six months. For these reasons I would find that Mr. Fulps was still being "held to answer" for his crime. Consequently, the speedy trial clock expired 90 days from January 17, 1997.

In a related issue, the trial court, relying on *State v. Phillips*, 66 Wn. App. 679, 833 P.2d 411 (1992), *vacated*, 121 Wn.2d 1001, 847 P.2d 919 (1993), determined it did not have jurisdiction to grant Mr. Fulps's motion to dismiss until it had both the person and the charge (upon filing the information) before it. Because *Phillips* is not good case

---

[2]CrR 3.3(a) provides in part:

"(a) **Responsibility of Court.** It shall be the responsibility of the court to ensure a trial in accordance with this rule . . . ."

law the trial court abused its discretion. Accordingly, I would reverse the denial of Mr. Fulps's motion to dismiss on this ground as well.