IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84803-8-I |
| AQUILINO CORONEL CRUZ, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — Aquilino Coronel Cruz[1] is serving a prison term after a jury convicted him of one count of child molestation in the first degree and two counts of rape of a child in the first degree. In this personal restraint petition (PRP), Coronel Cruz mainly asserts (1) he was deprived of counsel at a critical stage, (2) the court violated his right to a speedy trial, (3) he received ineffective assistance of counsel at both trial and in his prior direct appeal, and (4) his judgement and sentence is facially invalid. Coronel Cruz fails to provide evidence to support his many theories, asserts claims

---

[1] In petitioner's previous direct appeal this court, as did his counsel in the filed briefs, identified him as "Coronel-Cruz." State v. Coronel-Cruz, No. 82177-6-I, slip op. (Wash. Ct. App. Mar. 21, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/821776.pdf, review denied, 199 Wn.2d 1028, 514 P.3d 637 (2022). The hyphen is often used to prevent improper alphabetization using the second part of the surname. Matter of Garcia-Mendoza, 196 Wn.2d 836, 841 n.1, 479 P.3d 674 (2021). Because Coronel Cruz does not use a hyphen in his hand-written pro se petition, we follow his spelling of his own name in this opinion. Id. (recognizing defendant's hyphenated name in the court's docket is not how defendant spells his own name and electing to follow defendant's spelling of his own name).

untethered from any legal basis for relief, and otherwise does not establish any basis for relief. We deny his petition.

FACTS

The background facts are stated in this Court's unpublished opinion State v. Coronel-Cruz, No. 82177-6-I, slip op. (Wash. Ct. App. Mar. 21, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/821776.pdf, review denied, 199 Wn.2d 1028, 514 P.3d 637 (2022). We repeat what is necessary to provide context and where relevant. Coronel Cruz lived for three years in a household with unrelated minor children E.M. and E.W. In October 2018, E.M. informed his mother that Coronel Cruz had touched him inappropriately. The mother contacted law enforcement and had E.M. taken to a medical examination and forensic interview.

Following the forensic interview, police arrested Coronel Cruz on November 1. At his first appearance in district court, bail was set at $100,000. The State filed charges of child molestation in the first degree and two counts of rape of a child in the first degree of E.M. by way of information in superior court on November 6 and asked to increase bail because of an additional potential victim, E.M.'s brother E.W. The court found probable cause and granted the motion to set bail at $300,000. The King County Department of Public Defense assigned counsel to represent Coronel Cruz. Counsel filed a notice of appearance on November 15. The trial court later granted the State's motion to add charges for alleged acts against E.W. and join all charges in one trial over Coronel Cruz's objection and motion to sever.

Beginning on December 4, 2018, there were 16 continuances in this case. The longest continuance of nine weeks was issued by the trial court in compliance with the

Washington Supreme Court emergency orders which suspended criminal jury trials in response to the "state of emergency due to the novel coronavirus disease (COVID-19) outbreak in Washington." *In the Matter of Statewide Response by Washington State Courts to the COVID -19 Public Health Emergency*, No. 25700-B-607 (Wash. March 20, 2020),

https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Supreme%20Court%20Emergency%20Order%20re%20CV19%20031820.pdf (March 20 order)[2]; *In the Matter of Statewide Response by Washington State Courts to the COVID -19 Public Health Emergency*, No. 25700-B-615 (Wash. April 13, 2020),

https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/25700B615%20Revised%20and%20Extended%20Order%20Regarding%20Court%20Operations.pdf (April 13 order); *In the Matter of Statewide Response by Washington State Courts to the COVID -19 Public Health Emergency*, No. 25700-B-618 (Wash. April 29, 2020),

https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Extended%20and%20Revised%20Supreme%20Court%20Order%20042920.pdf (April 29 order).

In November 2020, a jury found Coronel Cruz guilty of one count of child molestation in the first degree and two counts of rape of a child in the first degree, and deadlocked on charges relating to E.W.

In Coronel Cruz's direct appeal, we affirmed the trial court granting joinder of the

---

[2] The trial court continuance of March 27, 2020 references Order No. 25700-B-606, (dated March 18, 2020) which was superseded by Order No. 25700-B-607 ("This amended order supersedes the Supreme Court's March 18, 2020 order (as corrected March 19, 2020."). Order No. 25700-B-606 is not available on the Washington Supreme Court website.

charges relating to E.W. with the original charges involving E.M. and denying severance. Coronel Cruz then filed this timely PRP.

DISCUSSION

While Coronel Cruz's pro se petition consists largely of observations about the record that do not appear tethered to a claim for relief, he also asserted identifiable claims. The State filed a response arguing that Coronel Cruz's petition is "impenetrable" and should be dismissed as frivolous. The State's response addressed some but not all of Coronel Cruz's identifiable claims for relief, many of which rely on facts outside of the record. Thus, the acting chief judge of this court determined the petition presented issues that are not frivolous, appointed counsel to represent Coronel Cruz, and referred the petition to this panel. Appointed counsel can communicate with the petitioner with the assistance of a court-certified interpreter, conduct investigation, and request to supplement the record. RAP 16.15(h); see also In re Pers. Restraint of Gentry, 137 Wn.2d 378, 391-92, 972 P.2d 1250 (1999) (discussing investigation and other services attendant to appointment of counsel in PRPs). Coronel Cruz's counsel did not request to supplement the record and notified this court no supplemental brief would be filed. It is under this backdrop that we review Coronel Cruz's petition.

Relief by way of a personal restraint petition is extraordinary. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A personal restraint petition is not a substitute for an appeal. In re Pers. Restraint of Hagler, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982). Collateral relief is limited because it "undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." Id. (citing Engle v. Isaac, 456 U.S.

4

107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

There are two types of challenges which may be raised in a collateral attack on a conviction: constitutional error or nonconstitutional error. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). We only consider the merits of a PRP if the petitioner meets their "threshold burden" of showing one of these two types of error. In re Pers. Restraint of Cook, 114 Wn.2d 802, 814, 792 P.2d 506 (1990) (citing In re Pers. Restraint of Williams, 111 Wn.2d 353, 365, 759 P.2d 436 (1988)).

A threshold showing of constitutional error requires that the petitioner "demonstrate by a preponderance of the evidence that petitioner was actually and substantially prejudiced by the error." Davis, 152 Wn.2d at 671-72. In most circumstances, this means the petitioner "'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice,'" but that the outcome would more likely than not have been different had the alleged error not occurred. Hagler, 97 Wn.2d at 825 (quoting United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed. In re Pers. Restraint of Rice, 118 Wn.2d 876, 885, 828 P.2d 1086 (1992) (citing In re Pers. Restraint of Hews, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

Nonconstitutional error requires a higher standard above the mere showing of prejudice. "We will consider nonconstitutional error only when 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Davis, 152 Wn.2d at 672 (quoting Cook, 114 Wn.2d at 812).

"[A] petition may be properly dismissed as frivolous even if the legal issue,

properly raised, might be debatable." In re Pers. Restraint of Khan, 184 Wn.2d 679, 686, 363 P.3d 577 (2015). A PRP is frivolous where "it fails to present an arguable basis for collateral relief either in law or in fact, given the constraints of the personal restraint petition vehicle." Id. at 686-87 (citing Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). For example, a "petitioner might raise a cognizable legal claim but fail to state with particularity the facts that would give rise to relief." Id. at 686 (citing Rice, 118 Wn.2d at 886). Another example of a frivolous claim is where the petitioner "made a debatable showing of error without making any attempt to show the requisite prejudice necessary for collateral relief." Id. at 686 (citing Coats, 173 Wn.2d at 166-67). A petitioner may not rely on "[b]ald assertions and conclusory allegations." Rice, 118 Wn.2d at 886.

### Manifest Injustice

In the first set of grounds for relief in Coronel Cruz's PRP, titled "Motion and Affidavit Manifest Injustice," he seeks relief for both "constitutional / non constitutional error creating fundamental error and . . . manifest injustice." Coronel Cruz cites State v. Taylor, 83 Wn.2d 594, 521 P.2d 699 (1974), and In re Pers. Restraint of Lord, 152 Wn.2d 182, 94 P.3d 952 (2004), to support his opening statement on manifest injustice. Both Taylor and Lord are inapposite. See Taylor, 83 Wn.2d at 595 (holding that the trial court erred in allowing defendant to withdraw his guilty plea because it was not necessary to correct a "manifest injustice" under CrR 4.2(f)); Lord, 152 Wn.2d at 182 (holding that prosecutor breached plea agreement). Coronel Cruz does not allege having ever been a party to a plea agreement.

We nonetheless address the cognizable legal claims that we are able to identify

in his PRP.

Deprivation of Counsel

Coronel Cruz asserts that he "was arrested and given bail" on or about November 6, 2018 and that the first appearance of his defense counsel "appears" to be November 15, demonstrating that he did not have counsel during a critical stage of the proceeding.

The right to counsel is guaranteed by both the state and federal constitutions and protected by our court rules. State v. Charlton, 2 Wn.3d 421, 426, 538 P.3d 1289 (2023); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Under CrR 3.1(b)(1) "[t]he right to a lawyer shall accrue as soon as feasible after the defendant is taken into custody, appears before a committing magistrate, or is formally charged, whichever occurs earliest." "This rule-based right extends to 'all criminal proceedings' and requires counsel at 'every stage of the proceedings.'" Charlton, 2 Wn.3d at 426 (quoting CrR 3.1(a), (b)(2)(A)). Denial of counsel at a critical stage of prosecution is structural error that requires automatic reversal. Id. at 427. A critical stage is "one where 'a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'" Id. (internal quotation marks omitted) (quoting State v. Heddrick, 166 Wn.2d 898, 910, 215 P.3d 201 (2009)). Not all pretrial hearings are critical stages, and the determination that a hearing was a "critical stage" requires examination of "a hearing's 'substance and not merely [its] form.'" State v. Heng, 2 Wn.3d 384, 392, 539 P.2d 13 (2023) (alteration in original) (quoting State v. Jackson, 66 Wn.2d 24, 28, 400 P.2d 774 (1965). "If there is no possibility that a defendant is or would be prejudiced in the defense of his case, then

this court will be reluctant to overturn the result of a fair trial where no denial of [petitioner's] constitutional rights is shown." Jackson, 66 Wn.2d at 28. A denial of counsel at preliminary hearing is not structural error requiring automatic reversal. Charlton, 2 Wn.3d at 427.

First, Coronel Cruz fails to establish that he appeared without counsel prior to November 15 when his *assigned* attorney filed a notice of appearance. He was arrested on November 1 and bail was set at his first appearance in district court. Coronel Cruz asserts that he had no counsel present at his arraignment and case scheduling, as evidenced by the fact that "[a]t least no other signiture [sic] appears on the document other than mine and the interpeters [sic]." He further argues that during the November 6 bail hearing there "appears" to be no objections to the State's request to increase bail.

It is not altogether clear what Coronel Cruz is referring to as his "arraignment" because he was arraigned on his felony charges on November 21, 2018 with his attorney present according to the clerk's minutes. The State's motion for increased bail on November 6 refers to Coronel Cruz's "first appearance" in district court. That suggests there were court hearings in district court and superior court between the time he was arrested on November 1 and his arraignment on November 21. It appears Coronel Cruz may be referring to appearances prior to his arraignment. See State v. Hardesty, 149 Wn.2d 230, 233, 66 P.3d 621 (2003) (discussing court rules allowing the State to initially file felony charges in district court and later file the case in superior court).

Certainly Coronel Cruz's *assigned* counsel could not appear at hearings prior to

when that counsel was assigned. He does not specifically assert that when he appeared on court calendars prior to being assigned an attorney that he was without counsel available to him at that time. We have no verbatim report of proceedings from any of these hearings. Coronel Cruz's appointed counsel in this appeal had the opportunity to investigate and submit records to support petitioner's claim if they indeed supported his claim. Based on the record before us, petitioner's allegations are nothing more than "[b]ald assertions and conclusory allegations." Rice, 118 Wn.2d at 886.

Certainly, the State in its response also could have supplemented the record to support its argument that all of petitioner's claims are frivolous. Instead, the State cited Matter of Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) for the proposition that "[t]his Court has no obligation – nor does the State – to 'comb the record with a view toward constructing arguments' for Coronel-Cruz." The Washington Supreme Court in Lint explained that if we were to ignore the rule requiring parties to cite to relevant parts of the record to support their arguments, "we would be assuming an obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings. This we will not and should not do." Lint, 135 Wn.2d at 532. Lint does not stand for the proposition that when the State files a response to a PRP and argues that all the claims are frivolous, that it is relieved of the need to support such an argument. This is especially true when a petitioner's claim relies on facts outside the record presented to this court. Regardless, we must base our review on the record before us.

Coronel Cruz makes no showing that any right or defense he possessed pre-arraignment was forfeited or went unpreserved by his claim that he was not represented

9

at arraignment.  Charlton, 2 Wn.3d at 427 (in determining whether the hearing was a critical stage the question on review "is whether the accused's rights were lost, defenses were waived, privileges were claimed or waived, or the outcome of the case was otherwise substantially affected.").  We conclude that Coronel Cruz fails to establish he was without counsel at a critical stage of the proceedings.

Constitutional Right to Speedy Trial

Coronel Cruz claims the court violated of his right to a speedy trial.  Coronel Cruz was arraigned on November 21, 2018.  Trial began October 19, 2020.  His initial trial expiration date was January 19, 2019.

A criminal defendant is provided the right to a speedy public trial under both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington constitution.  State v. Higley, 78 Wn. App. 172, 184, 902 P.2d 659 (1995).  "Unlike CrR 3.3, the constitutional right to speedy trial is not violated at the expiration of a fixed time, but at the expiration of a *reasonable* time."  State v. Monson, 84 Wn. App. 703, 711, 929 P.2d 1186 (1997).  A constitutional claim of violation of right to speedy trial is evaluated using what as referred to as the four Barker factors:  the "'length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  In re Pers. Restraint of Benn, 134 Wn.2d 868, 920, 952 P.2d 116 (1998) (quoting Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).  A constitutional speedy trial claim "necessitates a functional analysis of the right in the particular context of the case."  Barker, 407 U.S. at 522.  Our review is de novo.  State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013).

"In order to trigger the speedy-trial analysis, 'an accused must allege that the

interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay because by definition, the accused cannot complain that the government has denied him a speedy trial if it has, in fact, prosecuted his case with customary promptness.'" Ollivier, 178 Wn.2d at 827 (internal quotation marks omitted) (quoting Doggett v. United States, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). Just as the Supreme Court held that a 23-month delay was sufficient to trigger the Barker analysis, the 23-month delay in the instant case meets the threshold showing of presumptively prejudicial delay. Id. at 828.

However, just because the presumptive threshold has been met, does not mean that the right to a speedy trial has been violated. Id. at 828. We next examine the Barker factors. The factors are nonexclusive and none of these factors is sufficient or necessary to a violation. Id. at 827. The factors are interrelated and assist in determining whether a particular defendant has been denied the right to a speedy trial. Id. at 827-28.

A. Length of Delay

The first of the Barker factors is the length of the delay. Id. at 828.

In Ollivier, the Washington Supreme Court examined whether a 23-month delay violated constitutional speedy trial rights. It observed that numerous courts have not regarded delay as exceptionally long where the delay was as long as or longer than 23 months:

> E.g., United States v. Lane, 561 F.2d 1075 (2d Cir.1977) (58 months, much attributable to repeated requests by the defense for continuances); Gattis v. Snyder, 278 F.3d 222 (3d Cir.2002) (28-month delay, all of which was attributable to the defendant); United States v. Hills, 618 F.3d 619, 630-31 (7th Cir.2010) (two-year delay, most of which was attributable to the defense); United States v. Porchay, 651 F.3d 930, 940 (8th Cir.2011)

(assuming 39-month delay was presumptively prejudicial, no Sixth
Amendment violation; "much of the delay . . . was attributable to
[defendant's] own actions" where "[s]he filed well over fifty documents
during the nearly three years she was under indictment, including motions
which required responses and hearings, notices of interlocutory appeal,
and written motions for continuance"); *United States v. King*, 483 F.3d 969
(9th Cir.2007) (21-month delay did not violate the Sixth Amendment where
defense obtained numerous continuances, case was complex, and
defendant obtained new counsel halfway through proceedings); *United
States v. Larson*, 627 F.3d 1198, 1209-10 (10th Cir.2010) (31-month delay
did not violate Sixth Amendment in case that was not unduly complicated;
second factor weighed heavily against the defendant where every
continuance was attributable to the defendant).

Id. at 828-29 (alterations in original).  Three of the continuances in the instant case,

totaling 117 days, were initiated by the court in compliance with Washington Supreme

Court emergency orders continuing and managing criminal trials in response to the

dangers posed by COVID-19.[3]  The remaining continuances were requested by the

defense.  The State joined in requesting one continuance.

This case involved two alleged victims, litigation over the release of counseling

services provided by King County Sexual Assault Resource Center, uncooperative

witnesses, DNA testing, and the need to coordinate and complete some interviews

through Spanish interpreters.  Other delays were caused by poor weather causing

difficulty with scheduling interpreters, and illness of the defense investigator.  Defense

also needed time to prepare briefing to oppose the State's motion to join charges for

acts against E.W. to the original charges for acts against E.M., and to move to sever.

Nearly all of the continuances requested by defense were so defense counsel

---

[3] March 20 order; April 13 order; April 29 order; and *In the Matter of Statewide
Response by Washington State Courts to the COVID -19 Public Health Emergency*, No. 25700-
B-642 (Wash. September 10, 2020),
https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Excluded%20P
eriod%20Extension%20Etc%20Order.pdf (September 10 order).

could be prepared to defend. The delays caused by the pandemic also caused an unexpected, though understandable interruption that likely impacted defense preparation as well. The length of the delay was reasonably necessary and weighs against the defendant.

B. *Reason for Delay*

The second Barker factor is the reason for the delay. Id. at 831. A court looks to each party's responsibility for the delay and assigns different weights to the delay, primarily related to blameworthiness and the impact of the delay on defendant's right to a fair trial. Id. "At one end of the spectrum is the situation where the defendant requests or agrees to the delay and therefore 'is deemed to have waived his speedy trial rights as long as the waiver is knowing and voluntary.'" Id. (quoting State v. Iniquez, 167 Wn.2d 273, 284, 217 P.3d 768 (2009)). "At the other end of the spectrum, if the government deliberately delays the trial to frustrate the defense, this conduct will be weighted heavily against the State." Id. at 832.

Aside from the court-initiated continuances under the Supreme Court's emergency orders, Coronel Cruz did not object to any of the continuances, except perhaps one. The June 14, 2019 continuance order both indicates that Coronel Cruz did not object, but also reflects the word "objects" that is handwritten on the defendant's signature line. Because we do not have the verbatim report of proceedings, we are unable to determine if, at the end of the hearing on the motion to continue, Coronel Cruz did or did not object to the continuance. Even if Coronel Cruz did object to the continuance, defense requested it in order to conduct witness interviews. Notably, the record indicates that Coronel Cruz later twice agreed to continuances, including a

13

continuance after trials resumed following the Supreme Court's emergency orders.

Coronel Cruz offers no insight as to why he would have objected to a continuance at the June 14 hearing. Instead, he only attacks the Supreme Court's emergency COVID-19 orders as "abuse of process" because these orders were "not following actual science." While we do not address Coronel Cruz's assertion related to science and COVID-19 as that is not properly before us, we do address the procedural authority to continue cases under the emergency orders.

"Washington trial courts must comply with orders, rules, and other directives promulgated by our Supreme Court, which has the inherent authority to administer justice and ensure the safety of court personnel, litigants, and the public." State v. Griffin, No. 85918-8, slip op. at 5 (Wash. Mar. 4, 2024), https://www.courts.wa.gov/opinions/pdf/859188.pdf (citing State v. Wade, 28 Wn. App. 2d 100, 112-14, 534 P.3d 1221 (2023)). These orders include the Supreme Court's emergency orders in place that were the basis of the trial court finding good cause to continue Coronel Cruz's trial. "Even when such decisions implicate constitutional rights, as here, trial court decisions implementing COVID protocols are trial management decisions and are therefore reviewed under an abuse of discretion standard." Griffin, slip op. at 5 (citing State v. Ferguson, 25 Wn. App. 2d 727, 735, 524 P.3d 1080, review denied, 532 P.3d 150 (2023)). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Ferguson, 25 Wn. App. 2d at 735.

The trial court did not abuse its discretion in following the Supreme Court orders that were in response to Governor Inslee's proclaimed state of emergency due to the

COVID-19 outbreak in Washington and President Trump's declared national emergency due to the COVID-19 outbreak across the United States. March 20 order at 1; April 13 order at 1; April 29 order at 1; September 10 order at 1. See Ferguson, 25 Wn. App. 2d at 729 (holding that the trial court did not abuse its discretion by making trial management decisions that modified courtroom procedures in response to the COVID-19 pandemic).

The COVID-19-related continuances only accounted for about three months of Coronel Cruz's 23-month delay. All of the remaining continuances were sought by the defense with the State joining for one of the requests. "Time requested by the defense to prepare a defense is chargeable to the defendant, and this factor weighs heavily against the defendant." Ollivier, 178 Wn.2d at 837.

## C. Assertion of Rights

The third Barker factor is "the defendant's assertion of or failure to assert his right to a speedy trial." Id. at 837 (quoting Barker, 407 U.S. at 514). The failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Id. Here, Coronel Cruz at most asserted his right one time at the June 14, 2019 hearing. He then later agreed to two more continuances and never objected to his ultimate trial date. This factor does not weigh in favor of Coronel Cruz.

## D. Prejudice

In the last Barker factor, "prejudice to the defendant as a result of delay may consist of (1) 'oppressive pretrial incarceration,' (2) 'anxiety and concern of the accused,' and (3) 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Ollivier, 178 Wn.2d at 840

(alterations in original) (internal quotation marks omitted) (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). "[A] defendant *must* offer these or other particularized showings of prejudice when the delay is not due to bad faith on the government's part and the delay is not sufficiently long for a presumption of prejudice to arise." <u>Id.</u> "Presumed prejudice is recognized only in the case of extraordinary delay, except when the government's conduct is more egregious than mere negligence." <u>Id.</u> at 842. Coronel Cruz has not established that government's conduct was egregious. A delay of 23 months is not lengthy enough to constitute extreme delay warranting the presumption of prejudice. <u>Id.</u> at 843.

Similar to the defendant in <u>Ollivier</u>, Coronel Cruz's two years in jail awaiting his trial is not, on its face oppressive. <u>Id.</u> at 844. He does claim that being in jail caused him stress and anxiety that led to an emergency trip to the hospital related to his gall bladder and for an eating disorder. He fails to provide any support for such assertions or establish when the incident occurred. Even if it did take place, we do not know if it occurred early on in his incarceration or later after his trial had been continued multiple times. Coronel Cruz did not submit a declaration with his petition.

Last, Colonel Cruz does not assert that the delay in his trial impaired him from adequately preparing his case. In fact, the jury deadlocked on charges relating to E.W.

*E. Balancing the Factors*

Balancing the <u>Barker</u> factors clearly weighs against Coronel Cruz. The delay was not unduly long. The reasons for the delay were mostly to prepare a defense. He only, maybe, objected to one of the continuances and then agreed to two more continuances thereafter. The delay was not sufficiently extreme to be presumed

prejudicial. And he has not shown the required particularized prejudice.

We conclude that there was no violation of Coronel Cruz's constitutional right to a speedy trial.

<u>CrR 3.3 Time to Trial</u>

Coronel Cruz also claims that the court violated his CrR 3.3 time for trial. He specifically cites to two case scheduling orders entered on December 4, 2018 and January 8, 2019.

CrR 3.3(b)(1) provides in relevant part "[a] defendant who is detained shall be brought to trial within the longer of . . . 60 days after the commencement date specified in this rule or . . . the time specified under subsection (b)(5)." The initial commencement date shall be the date of arraignment. CrR 3.3(c)(1). CrR 3.3(c)(2)(i), in relevant part, provides that the commencement date resets upon the

> filing of a written waiver of the defendant's rights under this rule signed by the defendant. The new commencement date shall be the date specified in the waiver, which shall not be earlier than the date on which the waiver was filed. If no date is specified, the commencement date shall be the date of the trial contemporaneously or subsequently set by the court.

Continuances by written agreement of the parties or on motion by the court or a party are considered excluded periods in computing time for trial. CrR 3.3(e)(3), CrR 3.3(f). "If any period of time is excluded pursuant to section (e), the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period. CrR 3.3(b)(5). "A charge not brought to trial within the time limit determined under this rule shall be dismissed with prejudice." CrR 3.3(h). "A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those

time limits." CrR 3.3(d)(3). "A party who fails, for any reason, to make such a motion shall lose the right to object to the set trial date." State v. Walker, 199 Wn.2d 796, 798, 513 P.3d 111 (2022).

When Coronel Cruz was arraigned on November 21, 2018, his trial expiration date was January 19, 2019. At his next scheduled court date on December 4, 2018, he waived his right to a trial within 60 days of his arraignment if he remained in custody, and agreed to continue his case to January 8, 2019 with a new trial expiration date of March 9, 2019. On January 8, he again waived his right to a trial within 60 days and agreed to continue his case to February 5, 2019 with a new trial expiration date of April 8, 2019.

On both December 4, 2018 and January 8, 2019, it was defense who made the motion to continue trial. Coronel Cruz did not object to either continuance. Each order also included a signed certification by an interpreter that read: "I am fluent in the Spanish language, and I have interpreted this entire document for the defendant from English into that language. I certify under penalty perjury [sic] under the laws of the State of Washington that the foregoing is true and correct."

Coronel Cruz asserts that the interpreter told him "60 days continuance" each time, but that the expiration date on the form is evidence that he was "tricked" into agreeing to 90 days of free incarceration time. Coronel Cruz presents nothing more than his unsupported claims that he was misinformed by the interpreter. Notably, despite his belief that he was misinformed about the length of continuances, he does not contend that he was misinformed at following hearings where he again agreed to a continuance without objection. The record shows that the interpreters certified that they

interpreted the entire orders for the defendant.

Coronel Cruz lost his right to object to his trial date. And he fails to show a fundamental defect that inherently resulted in a complete miscarriage of justice. Davis, 152 Wn.2d at 672.

Ineffective Assistance of Counsel

Coronel Cruz claims that his "counsel was ineffective" which requires "remanding for a determination of prejudice."

"Both the Sixth Amendment to the United States Constitution and article I, section 22 (amendment 10) of the Washington State Constitution guarantee the right to effective assistance of counsel in criminal proceedings." In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (citing Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Petitioner bears the burden of showing both (1) that his counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him. Khan, 184 Wn.2d at 688 (citing State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010)). Prejudice is established when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. In a collateral challenge on effective counsel, the standard is the same as on direct appeal, meaning there is no additional burden to show "actual" and "substantial" prejudice if the petitioner can meet the existing prejudice standard for ineffective assistance. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-48, 280 P.3d 1102 (2012). There is a strong presumption of effective assistance, and the petitioner bears the burden of demonstrating an absence of a strategic basis for the challenged conduct. State v. McFarland, 127 Wn.2d 322,

335, 899 P.3d 1102 (2012).

Coronel Cruz claims that his trial counsel was ineffective for failing to conduct adequate pretrial investigation, failing to investigate whether the victim's claim of sexual abuse was fabricated, failing to investigate unidentified mitigating circumstances, failing to hire a child abuse interview specialist or DNA expert, failing to interview the State's DNA expert, failing to introduce unspecified telephone records, failing to investigate an alleged recantation by the victim to an unnamed priest, failing to move for suppression of "bed sheet evidence recovered during illegal seizure," failing to call unnamed alibi witnesses and present an alibi defense, failing to prevent the admission of unspecified "damaging character evidence," failing to obtain unidentified medical reports, and failing to provide sufficient advice and preparation for defendant's testimony. These claims are all based on facts outside of the record. This court appointed counsel who had the ability to investigate and supplement the record with supportive evidence if supportive evidence exists. We have received none.

In addition, Coronel Cruz alleges that his appellate counsel on his direct appeal was ineffective for failing to argue ineffectiveness of his trial counsel, and failing to cite "directly controlling precedent." He does not identify the controlling precedent. Moreover, petitioner does not explain how either counsel's alleged deficient performance caused actual prejudice.

Coronel Cruz has not met his burden. "[T]he petitioner must state *with particularity* facts which, if proven, would entitle him to relief . . . In short, the petitioner must present evidence showing that his factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." Rice, 118 Wn.2d at 886 (emphasis

added). Until Coronel Cruz can provide an "apparent basis in provable fact," his request for remand to a reference hearing "for a determination of prejudice" is unavailing. Id. "[T]he purpose of a reference hearing is to resolve genuine factual disputes, not to determine whether the petitioner actually has evidence . . . the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." Id.

### Sentence

The final set of grounds for relief in Coronel Cruz's PRP relates to his sentence. He asserts his judgement and sentence was facially invalid and the imposition of an indeterminate life sentence was illegal. He argues that his constitutional due process rights were violated by the arbitrary imposition of "a maximum term of life."

Because a jury convicted Coronel Cruz of molestation of a child in the first degree and two counts of rape of a child in the first degree, he was sentenced under RCW 9.94A.507. Under that statute, the court was required to impose an indeterminate sentence, a maximum term and a minimum term. RCW 9.94A.507(3)(a). A court "shall" set the maximum term for these crimes at "the statutory maximum sentence for the offense." RCW 9.94A.507(3)(b). Coronel Cruz's crimes are Class A felonies. RCW 9A.44.083; RCW 9A.44.073. The statutory maximum for class A felonies is "confinement in a state correctional institution for a term of life imprisonment." RCW 9A.20.021(1)(a).

Coronel Cruz contests the "definition and applicability of the term 'statutory maximum'" and argues that the highest "statutory maximum" that the State can impose for his crimes is the top of the standard range under RCW 9.94A.530. For support, he

cites Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).[4]

Blakely addresses an exceptional sentence imposed above the standard range for a *determinate* sentence crime (second-degree kidnapping, a class B felony which is not governed by RCW 9.94A.507). 42 U.S. at 299. The Blakely Court specifically distinguished its holding on standard range sentencing from the "indeterminate-sentencing regime." 42 U.S. at 305-09. State v. Clarke further discusses our state's "mandatory minimum sentencing regime" in the context of Blakely:

> The standard range for minimum sentences under [statute later recodified as RCW 9.94A.507] provides a guideline for when the [Indeterminate Sentence Review Board] should consider release, but the standard range does not in any way establish Clarke's maximum sentence. Because Clarke's sentence is indeterminate, his exceptional minimum sentence, although part of his punishment, is irrelevant under *Blakely* analysis because the relevant statutory maximum for *Apprendi* purposes is life imprisonment.

156 Wn.2d 880, 890-91, 134 P.3d 188 (2006). Coronel Cruz conflates determinate and indeterminate sentencing guidelines. He similarly misunderstands the application of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), arguing that the principle of Apprendi applies with equal force to facts increasing the mandatory minimum as it does to facts increasing the mandatory maximum." See Apprendi, 530 U.S. at 490 (requiring submission to a jury for proof beyond a reasonable doubt for facts employed to increase a penalty beyond the prescribed statutory maximum). Washington's sexual offenses statute, RCW 9.94A.507, does not have any

---

[4] Coronel Cruz also cites State v. L.J.M., 129 Wn.2d 386, 918 P.2d 898 (1996), and In re Pers. Restraint of Swagerty, 186 Wn.2d 801, 383 P.3d 454 (2016). The jurisdictional challenge in L.J.M. deals with geographical reservation boundaries and an assertion of tribal membership. 129 Wn.2d at 392. Swagerty involves the interaction between a defendant's waiver of an expired statute of limitations and acceptance of a plea offer. 186 Wn.2d at 809-10. They are inapposite.

of the features disapproved of in Apprendi. It is merely a carveout of specific crimes whose upper maximum limit, an indefinite life term, is specifically prescribed by the legislature. See In re Pers. Restraint of Forcha-Williams, 200 Wn.2d 581, 597-98, 520 P.3d 939 (2022) (discussing trial court discretion to impose maximum terms in a comparative context between determinate and indeterminate sentences).

Coronel Cruz's claim that his sentence is facially invalid fails.

### Language Claim

In Coronel Cruz's initial petition, he contends he is "prejudiced" from getting a fair and full review because all the clerk's papers and transcripts are in English. He previously moved this court to require the State to respond to his petition in Spanish. The acting chief judge of this court denied that motion as moot in light of appointing Coronol Cruz counsel. Similarly, because Coronel Cruz was appointed counsel who could communicate with Coronel Cruz with the assistance of a court-certified interpreter, and that counsel could have filed supplemental briefing if warranted, Coronel Cruz has not established that he was prejudiced solely by the fact the clerk's papers and transcripts are in English. "RAP 16.15(h) authorizes appointment of counsel in PRPs, and allows for the 'payment of such other expenses as may be necessary to consider the petition in the appellate court.'" Gentry, 137 Wn. 2d at 391-92.

### Remaining Claims

Coronel Cruz's remaining claims are untethered from any legal basis for relief. To name a few, he claims no warrant justified the impoundment of his vehicle; challenges the use of hearsay in the State's certification for determination of probable cause; appears to suggest the court did not consider factors under CrR 3.2 prior to

84803-8-I/24

setting bail; alleges he was subjected to "unlawful arrest without summons nor legal notice"; and generally claims the court abused its discretion when it denied "a defense motion in part."

We deny the petition.

_____
Coburn, J.

WE CONCUR:

_____          _____
Feldman, J.                      Díaz, J.

24